UNITED STATES of America, Appellee,

v.

Peter CANESSA, Defendant, Appellant.

No. 80–1310.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1981.

Decided March 23, 1981.

David D. Patterson, Boston, Mass. by appointment of the Court, with whom Cullen & Wall, Boston, Mass., was on brief, for defendant, appellant.

George F. Kelly, Asst. U. S. Atty., Springfield, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Convicted in the district court of various federal frauds,[1] Peter Canessa moved under 28 U.S.C. § 2255 to vacate the conviction and sentence. He also moved to have an investigation at government expense, and for witness subpoenas. The district court having ruled against him on all except the request for subpoenas, he brings this appeal. The district court's findings and rulings, made after an evidentiary hearing, are set out in a careful and comprehensive memorandum. We conclude that Canessa's claims are without merit.

Canessa's present complaints center around supposed conflicts of interest and deficiencies in representation by his attorney, Arthur Travers, especially in the period of the grand jury's investigation and before trial. As the facts are spelled out at length in the district court's memorandum and order of April 10, 1980, there is no need to repeat them.

Canessa argues that he was denied the effective assistance of counsel because Travers also represented eight other witnesses before the grand jury. In his representative capacity, however, Travers was not allowed inside the grand jury chamber, see United States v. Mandujano, 425 U.S. 564, 581, 96 S.Ct. 1768, 1779, 48 L.Ed.2d 212

(1976), and so had no occasion to raise objections, make evidentiary points, cross-examine witnesses, and so on. The district court found that Travers confined his role,

"to advising of the procedure before the grand jury and at the taking of handwriting exemplars. He gave advice to his clients when questions arose during the course of the proceedings. Many refused to answer on Fifth Amendment grounds."

There is no evidence that Travers gave Canessa misleading or improper advice in connection with Canessa's grand jury appearances, nor that his availability to other witnesses harmed Canessa (whose appearances before the grand jury in 1976 preceded the others). Indeed, Canessa was aware of Travers' other obligations and suggested that at least one, and possibly most, of the grand jury witnesses retain Travers. While multiple representation of clients before a grand jury could, in some imaginable circumstances, give rise to a disabling and prejudicial conflict of interest, see In re Investigation Before February, 1977, Lynchburg Grand Jury, 563 F.2d 652, 656–57 (4th Cir. 1977); In re Investigative Grand Jury Proceedings, 480 F.Supp. 162, 166–68 (N.D.Ohio 1979); Tague, Multiple Representation of Targets and Witnesses During a Grand Jury Investigation, 17 Am.Crim.L.Rev. 301, 306–10 (1980), we find no indication that this happened here. Even assuming without deciding that the sixth amendment is implicated, but see Mandujano, supra, 425 U.S. at 581, 96 S.Ct. at 1779; Lynchburg Grand Jury, supra, 563 F.2d at 655, and that this is a case of "joint" or "multiple" rather than merely "dual" representation, see United States v. DiCarlo, 575 F.2d 952, 957 (1st Cir.), cert. denied, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978), there has been no showing that whatever conflict of interest existed "adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).

* Of the District of Massachusetts, sitting by designation.

1. We affirmed the conviction of Canessa and codefendants. United States v. Ciampaglia, 628 F.2d 632 (1st Cir. 1980).

This being so, we do not need to delve into Canessa's further argument that the prosecutor had a duty to warn Canessa against the dangers of multiple representation and, in particular, acted improperly in telling only the non-target grand jury witnesses of the possible conflict that may have existed in Travers representing so many possible defendants. Canessa alone was represented by Travers at the trial and in an adequate fashion; given the absence of evidence that multiple representation prior to the trial caused him harm, we see no reason to pursue the issue of whether and when, as a matter of practice, prosecutors should render advice to persons called before grand juries. We decline to invoke our supervisory powers as requested by Canessa.

Canessa does not, in fact, stress multiple representation as the critical flaw in Travers' performance. Rather he now lays most emphasis on the conflict of interest said to result from the fact that Travers became, for a time in 1978, a grand jury target himself. Under the theory now urged, Travers deliberately failed to convey promptly the prosecutor's invitation that Canessa cooperate in return for a recommended one-year sentence and later failed to advise Canessa that he should cooperate. Canessa speculates that Travers purposely delayed passing along a letter expressing the prosecutor's interest and did not recommend cooperation because of fear that if Canessa cooperated with the prosecution, he would expose Travers' perjury before the grand jury and implicate the attorney in a conspiracy to obstruct justice whereby one Woods, with Travers' connivance, purportedly sought to have all confederates be represented by Travers and "stonewall" the investigation.

As an initial matter, we note that these claims are problematic at best. As to the attorney's supposed involvement in a plot to thwart the grand jury investigation, the government, after investigating Travers' role, and calling him before the grand jury, evidently felt it had too little to pursue the matter. Indeed, there is evidence that it may have been Canessa himself who brought his associates and Travers together. As to Travers' alleged perjury before the grand jury, Canessa now points to various supposed inconsistencies between Travers' grand jury testimony and testimony of certain witnesses in the evidentiary hearing before the district court. These, taken in the circumstances, can at most be termed mildly suggestive of the possibility that Travers misrepresented himself to the grand jury. They tend to be offset by other testimony in the record which supports rather than detracts from Travers' grand jury testimony.

The district court wisely chose to bypass all these murky speculations, and supportably determined that, even assuming the unproven worst as to Travers' motives, the evidence did not indicate that Canessa suffered harm in the situation where the alleged conflict is said to have been prejudicial—*i. e.*, where Travers supposedly withheld delivery of the letter containing the prosecutor's offer and later failed to advise Canessa that the offer ought to be accepted. Travers, as the district court noted, testified that he *had* promptly conveyed the prosecutor's offer. And the court found, based in part on Canessa's own testimony, that in any event Canessa had learned independently of the government's offer through his brother, knew the basic facts of his case, and had indicated his intention not to cooperate, thus making it immaterial whether Travers had promptly conveyed the offer or ever recommended that it be accepted. The court further found that Canessa "again refused to cooperate when Travers told him of the offer [from the government] prior to his arraignment in January, 1979." Finally, the court could see no harm accruing to Canessa from Travers' actions given the fact that the sentence Canessa actually received was but half the one-year sentence offered by the prosecutor. Thus even assuming the worst—that Travers had reason to prevent his client from cooperating—the court could see no harm ensuing.

█ We do not doubt that one duty of an attorney is to render advice, when the

circumstances warrant, concerning the advantages of cooperating and pleading. *See Lynchburg Grand Jury, supra,* 563 F.2d at 656–57. But we find neither clear factual error nor mistake of law in the district court's assessment of the present situation. Canessa's contention that a conflict of interest relating to Travers' status as a target of the grand jury adversely and significantly affected his representation simply draws too heavily upon speculation to support a conclusion that Canessa was denied effective assistance of counsel. *See Theodore v. State,* 614 F.2d 817, 821 (1st Cir. 1980); *United States v. Donatelli,* 484 F.2d 505, 507 (1st Cir. 1973).

Finally we find no error in the district court's denial of Canessa's two motions to hire an investigator. Prior to the evidentiary hearing on his motion to vacate judgment, Canessa filed a motion in the district court on February 25, 1980 requesting that he be allowed to incur $600 in investigative expenses pursuant to 18 U.S.C. § 3006A(e)(1). The expenses were to be used in locating and interviewing several of Travers' former clients "to determine if they have any information which can corroborate [Canessa's] statements" regarding Travers' alleged perjury before the grand jury. The motion was denied. On March 11, 1980, Canessa submitted a second motion, this time requesting that he be allowed to incur $80 in investigative expenses in order to locate Kay Gintner and serve her with a subpoena. This motion was also denied. Canessa now argues that the denial of his motions was error.

Section 3006A(e)(1) provides that

"—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services."

18 U.S.C. § 3006A(e)(1). It has consistently been held that "[i]n the absence of clear and convincing evidence showing prejudice to the accused, refusal to authorize funds under § 3006A is not reversible error." *United States v. Eagle,* 586 F.2d 1193, 1197 (8th Cir. 1978). *See United States v. Reddick,* 620 F.2d 606, 609 n.9 (7th Cir. 1980); *United States v. Harris,* 542 F.2d 1283, 1315 (7th Cir. 1976); *Mason v. State,* 504 F.2d 1345, 1352 (9th Cir. 1974), *cert. denied,* 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975). Such evidence is absent here.

■ Canessa claims that the denial of his requests to incur investigative expenses left him unable to interview several former clients of Travers who "could possess relevant information as to Travers and Woods." Travers appeared at the evidentiary hearing and testified at great length about his involvement in the case. Of the nine grand jury witnesses represented by Travers, five appeared at the evidentiary hearing: Canessa, John Gintner, Vernor Bancroft, Kathleen Staley and Charles Rock. Of the four who did not appear, two, Katherine Gintner and Marlene Wagner, had been questioned before the grand jury about their relationship with Woods and Travers. Thus, all but two of Travers' clients, Linda Pion and Ann Woods at some point were questioned about their knowledge of Travers and Woods. We have no reason to assume that these individuals perjured themselves or improperly refused to answer questions, or that Pion and Woods possess information not also known to other of Travers' clients or to Travers himself. We conclude that Canessa has not shown by "clear and convincing evidence" any prejudice arising from the denial of his requests for investigative funds.

*Affirmed.*