213 N.J. Super. 446 (1986)
517 A.2d 871
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THEODORE PYCH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1986.
Decided November 3, 1986.
*449 Before Judges MICHELS, O'BRIEN and SKILLMAN.
Arthur Penn argued the cause for appellant (Shain, Schaffer & Rafanello, attorneys; Arthur Penn, of counsel and on the brief).
Robert E. Bonpietro, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Robert E. Bonpietro, of counsel and Robert E. Bonpietro and Mildred Vallerini Spiller, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Theodore Pych was convicted of conspiracy to promote gambling, a crime of the third degree, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:37-2. The trial court sentenced defendant to the custody of the Hudson County Probation Department for a term of five years on the condition that he serve 364 days in the Hudson County Jail or Jail Annex. In addition, defendant was fined $15,000, assessed a penalty of $25, payable to the Violent Crimes Compensation Board and ordered to perform 350 hours of community service. This sentence, however, was stayed pending appeal. In the interim, defendant's motion for reconsideration of sentence was denied.
Defendant seeks a reversal of his conviction or, alternatively, a modification of his sentence on the following grounds set forth in his brief:

*450
 POINT I THE INDICTMENT OF DEFENDANT'S TRIAL COUNSEL,
 UNBEKNOWNST TO DEFENDANT, CREATED AN INHERENT
 CONFLICT OF INTEREST RESULTING IN A VIOLATION
 OF DEFENDANTS RIGHT TO THE EFFECTIVE
 ASSISTANCE OF COUNSEL AS SECURED BY ART. I,
 PAR. 10 OF THE STATE CONSTITUTION AND THE
 SIXTH AMENDMENT TO THE UNITED STATES
 CONSTITUTION.
 POINT II THE FAILURE OF DEFENDANTS COUNSEL TO
 DISCLOSE THE FACT OF HIS PENDING INDICTMENT
 DEPRIVED THE DEFENDANT OF HIS STATE AND
 FEDERAL CONSTITUTIONAL RIGHTS TO SELECT
 COUNSEL OF HIS OWN CHOOSING.
 POINT III THE SENTENCING GUIDELINES WERE VIOLATED IN
 THAT THE SENTENCING JUDGE MISAPPLIED AND GAVE
 DISPROPORTIONATE WEIGHT TO THE AGGRAVATING
 FACTOR OF "ORGANIZED CRIMINAL ACTIVITY" AT
 N.J.S.A. 2C:44-1a(5).
 POINT IV THE SENTENCING COURT'S CONCLUSION THAT THE
 DEFENDANT WAS SUBSTANTIALLY INVOLVED IN
 ORGANIZED CRIMINAL ACTIVITY WAS NOT BASED ON
 COMPETENT CREDIBLE EVIDENCE.
 POINT V THE SENTENCE IMPOSED WAS UNDULY EXCESSIVE.
 POINT VI THE SENTENCING COURT'S BIAS AGAINST
 DEFENDANTS IN GAMBLING CASES WHO RETAIN
 COUNSEL VIOLATED THIS DEFENDANT'S STATE AND
 FEDERAL CONSTITUTIONAL GUARANTEES OF RIGHT TO
 COUNSEL AT THE SENTENCING STAGE.

We have carefully considered these contentions and all of the arguments advanced in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). However, further comment is necessary with respect to some of the arguments advanced by defendant.

I.
Defendant contends that he was denied his constitutional right to the assistance of counsel as a result of the indictment of his trial attorney, John P. Russell. The first prong of his argument rests on the fact that Russell was under indictment during the trial of this case. Defendant contends that this created an inherent conflict of interest that violated his constitutional right to the effective assistance of counsel because "an attorney under indictment and awaiting trial may be hesitant in zealously advocating his client's cause in a criminal trial out of *451 fear of incurring the wrath of the State's representative(s)." The second prong of defendant's argument is that he was denied his constitutional right to secure counsel of his own choosing by virtue of Russell's failure to disclose his pending indictment to defendant.

A.
The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel in order to protect his fundamental right to a fair trial. Strickland v. Washington, 466 U.S. 668, 684-685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 691 (1984); Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); Gideon v. Wainwright, 372 U.S. 335, 339-340, 83 S.Ct. 792, 793-794, 9 L.Ed.2d 799, 802 (1963); Powell v. Alabama, 287 U.S. 45, 66, 53 S.Ct. 55, 63, 77 L.Ed. 158, 169 (1932). The New Jersey Constitution mirrors the federal provision, guaranteeing defendants in our State courts the right to counsel as well. State v. Fusco, 93 N.J. 578, 583 (1983); State v. Sugar, 84 N.J. 1, 15-16 (1980). To ensure a defendant of the protection intended by these constitutional rights, both the United States Supreme Court and the New Jersey Supreme Court have recognized that the right to the assistance of counsel necessarily is the right to the effective assistance of counsel. See, e.g., McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763, 773 n. 14 (1970); Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680, 699 (1942); State v. Bellucci, 81 N.J. 531, 538 (1980); State v. Land, 73 N.J. 24, 31 (1977).
Our state Supreme Court has also observed that "[t]he constitutional right to the `assistance of counsel' contemplates that the attorney's position as an advocate for his client should not be compromised before, during or after trial." Land, supra, 73 N.J. at 29. Moreover, an attorney's representation of *452 an accused must be "`untrammeled and unimpaired,' and his loyalty undivided." Bellucci, supra, 81 N.J. at 538. There can be no greater violation of a defendant's right to effective counsel than when his attorney is serving conflicting interests. Ibid. See also Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981) (where a right to counsel exists, an accused is entitled to the correlative right to representation free from any conflict of interest). Since the existence of such a conflict may render a trial constitutionally infirm, this issue warrants further discussion.
The most common scenario in which a conflict of interest may arise is when an attorney represents more than one client in the same matter. Hence, the few published New Jersey decisions addressing conflict of interest focus on this situation. Although none of these cases involves a conflict of interest stemming from the indictment of a defense attorney, these decisions are instructive on our Supreme Court's general approach to conflict of interest claims. In Land, the Court addressed the problem of multiple representation, noting, "Where the attorney cannot or may not be able to pursue an unrestrained course of action in favor of a defendant because he represents a codefendant, his effectiveness as counsel has been hampered." 73 N.J. at 30-31. Accordingly, the Land court opined that:
the preferable rule is that, in the absence of waiver, if a potential conflict of interest exists, prejudice will be presumed resulting in a violation of the New Jersey constitutional provision guaranteeing the assistance of counsel. [Id. at 35 (Emphasis supplied)].
In Bellucci, the Supreme Court similarly considered whether an attorney's representing several criminal defendants denied one of them the effective assistance of counsel. Relying upon Land, the Court reaffirmed that a constitutionally suspect conflict of interest generally arises from such legal representation. Because Bellucci's trial attorney had represented two codefendants until just before they entered guilty pleas and thus had a continuing obligation to refrain from acting against their interests, the Court found:

*453 that the potential for Russell to be less than a vigorous partisan for Bellucci existed in his continuing obligation to preserve the pretrial confidences and secrets of the [other codefendants]. [81 N.J. at 541 (Emphasis supplied)].
This mere potential for conflict was deemed sufficient to warrant reversing Bellucci's conviction. No showing of actual prejudice was required.
Recently, in State v. Bell, 90 N.J. 163, 173 (1982), the Supreme Court ruled that the representation by the public defender's office of multiple defendants in the same criminal action does not, in itself, give rise to a presumption of prejudice. This holding modified the principle enunciated in earlier decisions that once a potential for conflict was found to exist, prejudice would be presumed. Land, supra, 73 N.J. at 35; Bellucci, supra, 81 N.J. at 543. The Bell court concluded that "a conflict of interest with resulting prejudice to defendants will be presumed only when `the circumstances demonstrate a potential conflict of interest and a significant likelihood of prejudice.'" 90 N.J. at 175 (Handler, J., concurring) (Emphasis supplied). It was this flexible balancing approach that the Court used to resolve the claims of ineffective assistance of counsel.
Before applying the balancing test of Bell to this case, it must be noted that Russell's representation of defendant while under indictment was not in violation of any rules of ethical conduct. See New Jersey Rules of Professional Conduct  RPC 1.1 to RPC 8.5. An examination of the New Jersey Rules of Professional Conduct makes clear that, in adopting them, the Supreme Court did not intend to prohibit indicted attorneys from practicing law or serving as trial counsel. See, e.g., RPC 1.16 (providing that an attorney may not represent a client if: (1) representation will result in professional conduct violation; (2) his physical or mental condition is impaired; or (3) he is discharged).
The professional conduct rule which appears to be most on point is RPC 1.7. This rule provides, in pertinent part:

*454 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances and consultation with the client.... [RPC 1.7(b)(1), (2) (Emphasis supplied)].
Thus, in the present case, RPC 1.7 is applicable only if Russell's representation of defendant was materially limited by his own interest in his indictment. Because the analysis required under RPC 1.7 is analogous to that required by the first branch of the Bell test, an examination of whether the circumstances in this matter demonstrate a "potential conflict of interest" will suffice for both purposes.
In considering the record on appeal, we find that Russell's indictment was pending in Monmouth County at the time he served as defendant's trial counsel in Hudson County. Defendant speculates that:
an attorney under indictment and awaiting trial may be hesitant in zealously advocating his client's cause in a criminal trial out of fear of incurring the wrath of the State's representative(s).... [T]he psychological barriers are incalculable and the possibilities endless that the attorney will refrain from taking some action in his client's behalf which he perceives would somehow redound to his own detriment. [Emphasis supplied].
This argument ignores the fact that, at the time he represented defendant, Russell was well-known as a defense attorney in gambling matters. It is not likely that he would risk compromising his professional reputation by failing to put forth his best efforts in representing this defendant. Moreover, since Russell had been indicted in a different county, the authorities with whom he was dealing differed from those prosecuting defendant. These circumstances do not remotely demonstrate the required potential for conflict of interest which would give rise to a Sixth Amendment violation. Bell, supra, 90 N.J. at 171.
Even if such a potential were found to exist, Bell also demands proof of actual prejudice or the significant likelihood of prejudice. Defendant has not shown or even claimed any *455 actual prejudice due to Russell's representation. To the contrary, defendant has asserted that "it is impossible to quantify and even to specifically identify the prejudice to [him]." The inquiry must therefore shift to whether there was a significant likelihood of prejudice in this case.
In assessing the likelihood of prejudice, it is helpful to consider the law of other jurisdictions because of the lack of pertinent New Jersey case law. In Government of Virgin Islands v. Zepp, 748 F.2d 125, 132 (3d Cir.1984), the court was faced with an ineffective assistance of counsel claim grounded on an actual conflict of interest. This conflict was owing to defense counsel's potential criminal liability for the same charges on which defendant was tried. Even though the attorney had not yet been charged, the Third Circuit opined:
it [would be] unrealistic for this court to assume that [defendant's] attorney vigorously pursued his client's best interest entirely free from the influence of his concern to avoid his own incrimination. [Id. at 136 (Emphasis supplied)].
Because defense counsel had independent personal knowledge of his client's complicity in the crimes charged and faced potential liability for those very offenses, a Sixth Amendment violation was found to exist. Trial counsel was therefore required to withdraw.
However, where evidence of a conflict of interest, based upon an attorney's being targeted by a grand jury, is murky and speculative, ineffective assistance of counsel claims have not always been upheld. In United States v. Canessa, 644 F.2d 61 (1st Cir.1981), defendant's Sixth Amendment claim was based, in part, on an alleged conflict of interest arising from his attorney being a grand jury target while representing defendant. In support of this theory of conflict, Canessa speculated that his counsel, Travers, had been involved in a plot to thwart his own grand jury investigation. Consequently, Travers had failed to advise defendant of a prosecutorial invitation to cooperate in return for a lesser sentence. Canessa further conjectured that Travers' failure to convey this offer was due to a "fear that if [defendant] cooperated with the prosecution, he *456 would expose Travers' perjury before the grand jury and implicate the attorney in a conspiracy to obstruct justice...." Id. at 63. The grand jury ultimately decided not to indict defense counsel.
In considering the Sixth Amendment claim raised in Canessa, the First Circuit stated that the "claims [were] speculative at best," noting:
The district court wisely chose to bypass all these murky speculations and supportably determined that, even assuming the unproven worst as to Travers' motives, the evidence did not indicate that Canessa suffered harm in the situation where the alleged conflict [was] said to have been prejudicial .... [Ibid. (Emphasis supplied)].
Since Canessa's claim of conflict of interest was found to draw "too heavily upon speculation," the First Circuit concluded that Canessa had not been denied effective assistance of counsel.
Finally, in United States v. DeFalco, 644 F.2d 132, 133 (3d Cir.1980), reh'g den., 454 U.S. 1117, 102 S.Ct. 693, 70 L.Ed.2d 655 (1981), the Third Circuit considered whether there had been effective assistance of counsel where counsel, unbeknownst to appellant, was himself under indictment during the pendency of the appeal. Moreover, eight days before the scheduled date of disposition of DeFalco's appeal, his attorney had entered into a plea agreement, thereby conceding his guilt, and had been suspended from practicing law in the United States District Court for the District of New Jersey. This was the same court from which defendant's appeal was taken.
In such a factual context, the Third Circuit noted that it is often difficult or impossible to determine whether a defendant has actually been prejudiced by improper representation. Relying upon United States ex rel. Sullivan v. Cuyler, 593 F.2d 512, 520 (3d Cir.1979), vacated and remanded in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the DeFalco court resolved the matter before it under the rule that "not proof of prejudice, but possibility of prejudice" needed to be shown. 644 F.2d at 135 (Emphasis in the original). Although this standard for assessing conflicts of interest has *457 since been disapproved by the United States Supreme Court,[1]DeFalco is still instructive because its "possibility of prejudice" standard is similar to the "significant likelihood of prejudice" standard adopted by the New Jersey Supreme Court in Bell.
After reviewing the facts concerning the attorney's representation in DeFalco, the Third Circuit determined that "inherent emotional and psychological barriers created an impermissible potential of preventing appellate counsel from competing vigorously with the government." Id. at 136. In so holding, the court emphasized four crucial factors:
[First,] DeFalco's appeal emanated from the same district court in which his attorney was indicted, [second,] three of his attorney's indictments were processed, prior to the striking of the plea bargain, before the same district judge who presided over DeFalco's trial, [third] the same United States Attorney's office prosecuted DeFalco and his lawyer, and [fourth,] [the attorney] entered into plea bargaining during the pendency of DeFalco's appeal with the same United States Attorney's office that constituted his adversary on appeal. ... [Id. at 136-137 (Emphasis supplied)].
The existence of these considerations persuaded the DeFalco court that, "even without proof of actual conflict of interest, legitimate decisions of counsel were rendered suspect because of the potential for conflicting loyalties." Id. at 137. The court concluded that there had been ineffective assistance of counsel.
Although defendant has placed great reliance on DeFalco, we do not find the case persuasive, particularly because the four factors upon which the DeFalco court based its decision are not present here. Russell's indictment did not emanate from the same county or grand jury as did defendant's indictment; defendant was tried in Hudson County while defense counsel was under indictment in Monmouth County. Nor was Russell's *458 indictment processed before the same trial judge who presided over defendant's trial. Moreover, there is no evidence in the record that the trial court was even aware of Russell's indictment. Unlike the situation in DeFalco, defendant here was prosecuted by a different prosecutor's office than was his attorney. Finally, during the pendency of defendant's trial, Russell did not enter into a plea bargain with defendant's adversary, the Hudson County Prosecutor's Office. In fact, Russell was subsequently tried and acquitted.
Applying the standard for determining ineffective assistance of counsel claims promulgated in Bell, we conclude that the circumstances here do not demonstrate the required "potential for conflict of interest" which would implicate a Sixth Amendment violation. Moreover, even if such potential is deemed to exist, there was neither actual prejudice nor a "significant likelihood of prejudice," essential to finding that there was a constitutional infirmity in Russell's representation of defendant.

B.
Defendant also contends that his Sixth Amendment right to counsel of his own choosing was infringed as a result of Russell's failure to disclose the fact of his indictment. Defendant claims that "[h]ad he known that Mr. Russell was under indictment, [he] would not have chosen him" as defense counsel "because of fear that the lawyer would not be able to devote his total attention to [his] case out of concern for his own criminal charges." Furthermore, defendant expressed fears of "what others, including the trial judge, might think about [him] because [he] had a lawyer under indictment."
Russell was under no duty to disclose his indictment to defendant. Contrary to defendant's argument, such a disclosure is not mandated by the nature of the attorney-client relationship. An attorney is "bound to exercise a reasonable degree of care and prudence having reference to the character *459 of the service he undertakes to perform." Passanante v. Yormark, 138 N.J. Super. 233, 238 (App.Div. 1975), certif. den., 70 N.J. 144 (1976); see also Frank H. Taylor and Son, Inc. v. Shepard, 136 N.J. Super. 85, 90 (App.Div. 1975). Although an attorney's "duty includes the obligation of informing his client promptly of any information important to him," Passanante, supra, 138 N.J. Super. at 238, the information must pertain to the particular matter for which the attorney was consulted. Plainly, the duty to disclose does not extend to information personal to the attorney. Moreover, the New Jersey Rules of Professional Conduct do not require that an attorney reveal to a client information relating to his own indictment. See RPC 1.1 to RPC 8.5. With respect to communications, the rules simply provide that:
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. [RPC 1.4].
This rule is consistent with our opinion in Passanante.
Russell's failure to disclose his indictment to defendant does not constitute a violation of the latter's Sixth Amendment right to counsel of his own choosing. Likewise, applying the benchmark for judging claims of ineffective assistance of counsel, we are convinced that Russell's conduct did not so undermine "the proper functioning of the adversarial process that [defendant's] trial cannot be relied on as having produced a just result." Strickland, supra, 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692-693.

II.
Defendant contends that the sentencing court erroneously applied the criteria for imposing sentence contained within N.J.S.A. 2C:44-1. Among his specific claims is that the sentencing court abused its authority in misapplying the statutory aggravating circumstance concerning a defendant's involvement *460 in organized criminal activity. See N.J.S.A. 2C:44-1a(5). A careful review of the record is necessary to determine the validity of this argument.
In imposing sentence, the sentencing court noted:
Here among the aggravating circumstances is criteria number five, namely there is a substantial likelihood that the defendant is involved in organized criminal activity. Here, more than a likelihood, a certainty. [Emphasis supplied].
Defendant cites error in the sentencing court's having considered his involvement in organized criminal activity in imposing sentence for conspiracy to promote gambling. See N.J.S.A. 2C:44-1a(5) (providing that a sentencing court shall consider the aggravating circumstance that "[t]here is a substantial likelihood that the defendant is involved in organized criminal activity"). In support of his contention that consideration of this aggravating factor was erroneous, defendant relies upon State v. Link, 197 N.J. Super. 615 (App.Div. 1984), certif. den., 101 N.J. 234 (1985).
In Link, a case involving the third degree crime of aggravated assault upon a police officer, the trial court imposed a sentence which departed from the presumptive term prescribed for that offense. In so ruling, "the trial judge considered as an aggravating factor the fact that the assault was committed upon a police officer." Id. at 619. See N.J.S.A. 2C:44-1a(8) (specifying the aggravating circumstance that "[t]he defendant committed the offense against a police or other law enforcement officer ..."). On appeal, we set aside the sentence for aggravated assault and remanded the matter for reconsideration, emphasizing that:

Where an essential element of the crime is a specific fact, here the police status of the victim, that element may not be used as an aggravating factor to impose a custodial sentence that is longer than the presumptive term or to impose a period of parole ineligibility. [Link, supra, 197 N.J. Super. at 620 (Emphasis supplied)].
The Link decision, however, is not controlling in this case, where the aggravating factor of involvement in organized crime is not an element of the conspiracy offense of which *461 defendant was convicted. See N.J.S.A. 2C:5-2a (defining the crime of conspiracy); N.J.S.A. 2C:37-2a (defining the crime of promoting gambling). Moreover, here, the aggravating factor was not used for purposes of imposing a sentence longer than the presumptive term or imposing a period of parole ineligibility.
More instructive on this point is State v. Pavin, 202 N.J. Super. 255, 264-267 (App.Div. 1985). Pavin concerned the propriety of a sentence of 300 days in a county jail and a fine of $3,000 for the fourth degree crime of death by auto. In imposing this sentence, the trial court in Pavin relied upon the death of the victim as an aggravating circumstance. Defendant appealed, maintaining that the trial court had failed to adhere to the Code's sentencing guidelines in that it ignored the presumption of nonincarceration for the first offender. See N.J.S.A. 2C:44-1e. We explained that, because a loss of life is implicit in a death by auto conviction:
[d]eath is therefore an element of the offense and not an aggravating factor justifying more significant punishment or overcoming the presumption of nonincarceration. [202 N.J. Super. at 267 (Emphasis supplied)].
We therefore held that a sentencing court "may not rely on the basic elements of the offense as aggravating factors," and, in so doing, the trial court had erred.
Pavin proscribes the application of an aggravating circumstance contained within N.J.S.A. 2C:44-1a to overcome the presumption of nonincarceration for a third or fourth degree offense. However, both that case and Link illustrate that such an application is improper only when the aggravating factor is an actual element of the offense. This situation does not obtain here. Involvement in organized criminal activity was not a constituent part of the offense of conspiracy to promote gambling.
Defendant also alleges that the sentencing court's finding that he was involved in organized criminal activity was not based on competent credible evidence. Defendant argues that since the sentencing judge had not presided at defendant's trial, *462 he "relied [only] upon a memorandum prepared by the State in determining that defendant played a substantial role in the gambling operation." In defendant's view, a sentencing court must rely on something more than "the State's self-serving memorandum" in imposing sentence.
In support of his argument, defendant attacks the validity of a November 5, 1965 directive issued by the Administrative Office of the Courts on behalf of the Supreme Court. In pertinent part, this directive reads:
The Supreme Court is of the view that it is essential for the fair and effective administration of criminal justice that judges in imposing sentences adhere to the same general policy in cases which may involve syndicated crime. Unfortunately, in gambling cases efforts to achieve such uniformity, even within the same county, have not been successful when sentences have been imposed by whatever judge happens to be sitting at the time. Accordingly, the Supreme Court considers it necessary to require that the Assignment Judge in each county either personally handle all sentencing in gambling cases or designate a particular judge to impose sentence in all such cases, even though the case may have been tried or the plea taken before another judge. [Emphasis supplied].
The constitutionality of this directive was upheld in State v. DeStasio, 49 N.J. 247, 254-255 (1967), cert. den., 389 U.S. 830, 88 S.Ct. 96, 19 L.Ed.2d 89 (1967), wherein our Supreme Court noted that, due to the pre-Code concern that "different judges sentence differently":
[It was] decided as a matter of administrative policy to have all sentencing in these matters handled by a single judge in each county. [Id. at 255].
Defendant asserts that this directive is invalid in light of the sentencing provisions of the Code which were enacted to ensure uniformity of treatment. We disagree. If, in the view of the Supreme Court, this directive became invalid with the adoption of the Code, the Court could have easily rescinded it. The Court has not done so and either assignment judges or other designated judges continue to impose sentences in gambling matters.
In addition, the rationale underlying the issuance of the directive is compatible with the Code. Expounding upon the purpose of the November 5, 1965 directive, Chief Justice Weintraub *463 observed in DeStasio, "If a defendant receives the punishment his offense warrants, he has received his due." 49 N.J. at 260 (Emphasis supplied). This view of the ultimate goal of sentencing is consistent with the Code which "requires an inexorable focus upon the offense when formulating a sentence." State v. Roth, 95 N.J. 334, 367 (1984). See also State v. Hodge, 95 N.J. 369, 377 (1984) (sentence imposed must reflect Legislature's intention to focus on degree of crime, as opposed to other factors). Accordingly, the results sought by the directive do not conflict with the theory behind the Code's sentencing provisions.
Defendant is correct in asserting that there must be competent, credible evidence in the record to support the sentencing court's findings of fact. Roth, supra, 95 N.J. at 364-366; State v. Morgan, 196 N.J. Super. 1, 5 (App.Div. 1984). However, despite what defendant avers, there was sufficient evidence before the sentencing court to justify its finding that defendant was significantly involved in organized criminal activity. The sentencing court specifically noted the jury's findings of fact that: (1) the bookmaking operation which defendant conspired to promote accepted more than five bets totaling over $1,000 per day; (2) the operation received money or written records from a person, other than a player, whose chances were represented by such moneys or records; and (3) the operation received more than $100 per day in money played in a gambling scheme. Moreover, at the sentencing hearing, the court questioned the prosecutor about the amount of money involved in the conspiracy and then afforded counsel and defendant an opportunity to be heard. Relying on the information thus gleaned, the jury's findings, written materials, including the sentencing memorandum and a pre-sentence report and information provided to him at sentencing about the activities of a controller in a gambling operation, the sentencing court was justified in concluding that:
defendant played a significant part in an organized criminal business venture, a very significant part. [Emphasis supplied].
*464 One other point which warrants attention is defendant's claim that the sentencing memorandum upon which the sentencing court relied was "skewed to the State's benefit" and self-serving. The sentencing memorandum provided an accurate factual account of the occurrences of March 20, 1984 and March 27, 1984, upon which defendant's conviction for conspiracy to promote gambling was based. Defendant's counsel made no objection to the contents of this memorandum during oral argument at the sentencing hearing. Thus, defendant's assertion on appeal that the memorandum was biased is unsubstantiated.
A case which supports the conclusion reached by the sentencing court is State v. Passero, 105 N.J. Super. 438 (App.Div. 1969), certif. den., 54 N.J. 519 (1969). There, an accused challenged his sentence for bookmaking. In imposing this sentence, the assignment judge  a judge other than the one who presided at the trial  had commented that "this [was] a syndicated, large operation." On appeal, Passero argued that his sentence was improper because it was "not based on information contained in the record." This argument was rejected, as the record indicated that the bookmaking operation generated $400 or $500 a day with more than $160 in number bets. Therefore, we found no error in the sentencing judge's comment.
Similarly, the comments of the sentencing court in this case were not erroneous. Defendant's role in the gambling activity was deemed significant, even though limited to only three of 265 recorded calls. That this characterization was proper is highlighted by a finding made by our Supreme Court in State v. Souss, 65 N.J. 453 (1974). In that case, defendant Souss was found to be instrumental in the conspiracy despite occupying a seemingly minor position in the overall operation. Justice Clifford incisively observed:
[W]hile it may well be that defendant had little by way of status in the hierarchy of organized crime . .. the fact remains that the syndicated gambling system cannot long survive without the efforts of those in Souss's position. He *465 gave it both the necessary nourishment and encouragement. To believe he was not associated with organized crime would require a measure of naivete not befitting ... the sentencing judge.... [Id. at 458-459 (Emphasis supplied)].
This observation applies with equal force to the instant controversy and reinforces the sentencing court's finding that defendant's contribution to the conspiracy was significant.

III.
Finally, we are compelled to comment upon defendant's charge that the sentencing court was biased "against defendants in gambling cases who retain counsel" and that this bias violated his constitutional "right to counsel at the sentencing stage." In denying defendant's motion for reconsideration of his sentence, the sentencing court stated:
Nothing has been presented to this Court which indicates that Chief Justice Weintraub's observations of 25 years ago are any less valid today. The organized gambling racket continues to generate enormous quantities of money for organized crime. Federal Judge Cavanaugh, who is Chairman of President Reagan's Commission on Organized Crime said as much just a few weeks ago.

If there is any doubt as to the validity of those observations, indigent defendants before this Court use the Public Defender, defendants in organized gambling usually have funds for bail, attorneys, transcripts, appeals. Chief Justice Weintraub said fines in lieu of custodial sentences in these types of cases would be license fees. The Court should not license illegal enterprises. [Emphasis supplied].
The above emphasized language neither indicates a bias against defendants in gambling cases who retain private counsel nor infringes defendant's Sixth Amendment right to counsel. Defendant's assertion to the contrary is clearly without merit.
Careful study of the transcripts of the sentencing hearing and the motion for reconsideration shows that the sentencing court exercised its sentencing discretion in an unbiased manner. Likewise, the imposition of a custodial term upon defendant as a condition of probation constituted a proper exercise of discretion. Neither manifestly excessive nor unduly punitive, the sentence is not a miscarriage of justice. Nor does the sentence shock the judicial conscience.
*466 Accordingly, the judgment of conviction and order of commitment are affirmed.
NOTES
[1] This rule was expressly rejected by the United States Supreme Court in Cuyler v. Sullivan, supra, wherein Justice Powell emphasized:

We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. [446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348 (Emphasis supplied)].