STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. ALDO VELEZ, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JAMES NEGVESKY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 28, 1988—Decided December 16, 1988.

Before Judges PETRELLA, SHEBELL and GRUCCIO.

*A. Kenneth Weiner,* attorney for appellant Aldo Velez (*Mark S. Cholouski,* of counsel; *Jack M. Dudas,* on the brief).

*Bowers, Murphy, O'Brien & Lieberman,* attorneys for appellant James Negvesky (*Steven B. Lieberman,* joined in the brief submitted on behalf of codefendant Velez and submitted a separate letter brief).

*W. Cary Edwards*, Attorney General, attorney for respondent (*Robert E. Bonpietro*, Deputy Attorney General, of counsel and on the letter brief in A–1261–87; *J. Grall Robinson*, Deputy Attorney General, of counsel and on the letter brief in A–1258–87).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

These appeals involve the issue of whether a defendant has a right to require sentencing under the Comprehensive Drug Reform Act of 1986 (CDRA) when the offenses involved occurred prior to that act's effective date. Since both defendants were the subject of the same indictment and the same issues are involved in both appeals we hereby consolidate them for purposes of this opinion.

Defendant Aldo Velez entered a guilty plea to nine counts in an indictment directed against him as follows: one count of conspiracy to distribute a controlled dangerous substance (cocaine); two counts of distribution of a controlled dangerous substance; three counts of possession of a controlled dangerous substance; two counts of possession of a controlled dangerous substance with intent to distribute; and one count of obstructing the administration of the law.

Codefendant James Negvesky entered a *retraxit* plea of guilty to the indictment charging him with one count of conspiracy to distribute a controlled dangerous substance; one count of distribution of a controlled dangerous substance; three counts of possession of a controlled dangerous substance; and three counts of possession of a controlled dangerous substance with intent to distribute.

The sentencing judge declined to sentence Velez and Negve-

sky under the Comprehensive Drug Reform Act of 1986.[1] Velez was sentenced on November 13, 1987 to concurrent five year terms of imprisonment, two years without parole eligibility, on each of the drug related charges. He was also sentenced to a concurrent 18 month term of imprisonment on his conviction for obstructing the administration of the law. Velez was fined $3,000 on the conspiracy conviction. Violent Crimes Compensation Board penalties aggregating $270 were assessed.

On that same date, the judge merged the conviction for possession with intent to distribute with the conviction for distribution of a controlled dangerous substance and sentenced Negvesky to concurrent five year terms of imprisonment on the convictions on the remaining counts, two years without parole eligibility. In addition, Negvesky was fined $3,000 and Violent Crimes Compensation Board penalties aggregating $210 were assessed.

On their appeals,[2] the defendants argue:

I.   They have a right to election of sentencing under *N.J.S.A.* 2C:35–1 *et seq.*

II.  Even under the provisions of *N.J.S.A.* 24:1–1 *et seq.*, they should have been entitled to a noncustodial sentence.

III. The mitigating factors in this instance substantially outweigh the aggravating factors and accordingly, the presumption of non-incarceration has not been overcome.

IV.  A period of parole ineligibility was not warranted in this instance.

The facts relating to the indictment and convictions may be briefly stated. The Somerset County prosecutor's office received information in February 1987 that several savings bank

---

[1]*L.*1987, *c.* 106 (*N.J.S.A.* 2C:35–1 *et seq.*), effective July 9, 1987. Section 1 of the statute (*N.J.S.A.* 2C:35–1) refers to the short title of the act as the "Comprehensive Drug Reform Act of 1986." Nonetheless, the law was not enacted or effective until 1987. We observe that some statutory compilations refer to it as the act of 1987. Until the statute is amended we will refer to it as titled.

[2]The appeals were originally scheduled to be heard on April 25, 1988 as part of the excessive sentence oral argument program. See *State v. Bianco*, 103 *N.J.* 383 (1986). They were postponed for briefing of the issues involved and ordered calendared back-to-back with a related appeal in *State v. Abraham Smalls*, docket number A–794–87, which was also decided this date.

employees were involved in the use and distribution of cocaine. As a result, an undercover investigation was conducted at the particular bank where these activities were suspected to be taking place. The investigation revealed that Velez and Negvesky, as well as two others, were involved in a plan to sell cocaine. Ultimately, these individuals were arrested and indicted on charges of conspiracy, possession and distribution of cocaine.

Negvesky entered his *retraxit* plea of guilty to all charges on September 28, 1987. When his plea was entered Negvesky admitted knowing all of the codefendants except Velez. He acknowledged that between February 17 and March 20, 1987 he either had conversations with or had made plans with another codefendant, Georgette Specht, and a person who turned out to be an undercover police officer, relating to the sale of cocaine to that officer. Negvesky admitted selling a gram of cocaine to the undercover police officer on February 28, 1987 and meeting with his brother Thomas Negvesky (also a codefendant) and that officer on March 20, 1987 in order to make another sale. On that latter date they were arrested. At the time of his arrest Negvesky had 3.3 grams of cocaine on his person. A subsequent search of Negvesky's home resulted in 2.68 grams of cocaine being found.

Velez said at his September 29, 1987 plea proceeding that he only knew codefendant Specht, and that between February 17, 1987 through March 20, 1987, he had discussions with Specht concerning the sale of cocaine. Velez also admitted that on March 13 and March 20, 1987, he possessed a quantity of cocaine with intent to distribute it, and indeed did so on those dates. When confronted by police officers who arrived to search his house on March 20, 1987 he initially resisted police efforts to search his house. The search of the house yielded 1.72 grams of cocaine.

The offenses committed by Velez and Negvesky occurred approximately four months prior to the July 9, 1987 effective

date of the CDRA. They were sentenced November 13, 1987, approximately four months after that act's effective date. Hence, the transitional rule under *N.J.S.A.* 2C:35–23c(2) is implicated. In rejecting defendants' arguments that they should be sentenced under the CDRA, the sentencing judge concluded that although the defendants had an option to request and consent to sentencing under the CDRA, the "sole and exclusive authority to determine whether or not [a defendant] is to be sentenced under the new Title 35 [*N.J.S.A.* 2C:35–1 *et seq.*] or the old Title 24" is vested in the court.

Both Velez and Negvesky argue that the transitional rules of the CDRA give them the right to elect to be sentenced under either the CDRA or under the provisions of the prior New Jersey Controlled Dangerous Substance Act, *N.J.S.A.* 24:21–1 *et seq.* The applicable transition rule in *N.J.S.A.* 2C:35–23 provides:

> Pending Cases. a. Except as provided in subsections b. and c. of this section, any violation of a provision of P.L.1970, c. 226 (C. 24:21–1 et seq.) which is amended or deleted by this act, and which violation was committed prior to the effective date of this chapter, shall be governed by the prior law, which is continued in effect for that purpose, as if this act were not in force.
>
> \*      \*      \*      \*      \*      \*      \*      \*
>
> c. In any case pending on or initiated after the effective date of this act involving an offense defined herein and committed prior to such date:
>
> \*      \*      \*      \*      \*      \*      \*      \*
>
> (2) The court, with the consent of the defendant, may impose sentence under the provisions of this chapter applicable to the offense and the offender;

█ Defendants argue that *N.J.S.A.* 2C:35–23c(2) requires the court to apply the sentencing scheme under Title 24 unless a defendant chooses to be sentenced under the CDRA. They contend that where the offense occurred prior to the effective date of that act, but sentence is imposed after the effective date of the CDRA, their choice to be sentenced under the CDRA is mandatory. Appellants argue that such an interpretation is consistent with the interpretation of similar language in *N.J. S.A.* 2C:1–1c(2), and that the CDRA should be interpreted accordingly. Appellants rely on *State v. Davis,* 175 *N.J.Super.*

130, 147 (App.Div.1980), certif. den. 85 *N.J.* 136 (1980). The defendant in *Davis* had committed the offense for which he was charged before the effective date of the new Penal Code, *N.J.S.A.* 2C:1–1 *et seq.* He was sentenced subsequent to its effective date under the sentencing provisions of the new Code as he had requested. *Id.* at 134. On appeal the sentence was challenged by Davis on various grounds, including a constitutional attack of the sentencing provisions under the new Code. Davis argued that because the sentence under the Penal Code was more severe than it would have been under pre-Code statutes it was, therefore, unconstitutional as an *ex post facto* law. 175 *N.J.Super.* at 146–147. Davis' sentence was upheld, and because we considered *N.J.S.A.* 2C:1–1c(2) to be merely a procedural provision under which defendant had voluntarily consented to be sentenced under the Penal Code, no constitutional violation was found. *Id.* at 147.

In our view, the language in *State v. Davis,* referring to a right to elect sentencing under either the new Code or the former law may either be considered *dicta,* expressed in connection with the court's observations regarding defendant's voluntary consent pursuant to the transitional rule, or at a minimum it is certainly too broad a reading of *Davis.* Whether Davis had a right to require sentencing under the Code or merely an option to request or elect such sentencing with the right to also veto unrequested sentencing under the new Code was not relevant to our holding in *Davis* that under the circumstances the statute was not unconstitutional as an *ex post facto* law as applied in that case. *Davis* did not involve the question of whether a defendant had either an absolute right to require sentencing under the Code, or only a right of rejection or veto. The question was whether the transitional provisions of the Penal Code under review permitted such voluntary consent in a manner sufficient to prevent application of the *ex post facto* doctrine.

Velez and Negvesky also rely on the following language from the Official Comment to *N.J.S.A.* 2C:35–23c(2):

This section addressed the issue of pending cases, and is patterned after *N.J.S.A.* 2C:1-5 [*sic*] which governed the transitional period following the enactment of the New Jersey Code of Criminal Justice, which became effective on September 1, 1979. Specifically, this section provides that if an offense was committed prior to the effective date of this chapter, it shall be governed by prior law, *except that the defendant may elect to be sentenced under the provisions of this chapter* which are otherwise applicable to the offense and the offender. Official Commentary to the Drug Reform Act of 1986, reprinted in 9 *Crim. Just. Quarterly* 166-167 (1987) (emphasis supplied).

The language of this comment is not dispositive of the issue before us. The comment does not even mention the language in the statute which states that the court "may" impose sentence under the CDRA. Moreover, defendants' proposed construction of *N.J.S.A.* 2C:35-23c(2) is contrary to the long-standing and fundamental principle vesting discretion in matters of sentencing in the court. See, *e.g.*, *State v. Pohlabel*, 61 *N.J.Super.* 242, 251 (App.Div.1960). As pointed out by the State, defendants' construction would drastically change long-standing sentencing principles by allocating to defendants the sole discretion to choose a sentencing scheme. Such a change would have to be clearly spelled out by the Legislature. *State v. Maguire*, 84 *N.J.* 508, 520 (1980).

Appellants also rely on *N.J.S.A.* 2C:35-1.1c and d in arguing that they should be sentenced under the CDRA as a matter of fundamental fairness. Their argument seems premised on the claim that due to the nature of their crimes and their lack of prior criminal activity they cannot be considered "most culpable dangerous drug offenders," *i.e.*, the drug offenders according to the statement of legislative intent that the act was intended to address.

This argument is unsupported by any authority which indicates that the Legislature intended that the CDRA should apply to defendants who committed acts prior to its effective date. Moreover, the legislative intent of the CDRA is to increase penalties for various drug acts. Nothing in that act indicates

an intent that it apply retroactively. Indeed, under the Code of Criminal Justice, the Legislature set up a specific procedure for review of pre-Code sentences in order to reduce disparity in sentencing between the sentencing under the Penal Code and the prior statutes. No such mechanism exists in the CDRA act. If defendants were accorded the ultimate right to elect which act they were to be sentenced under, this might well increase disparity of sentencing, rather than decrease it. In our view a more reasonable interpretation is that a defendant may request to be sentenced under the CDRA for an offense committed prior to its effective date, but he is not automatically entitled to have his request granted. If entitlement upon request was the intent of the statute the Legislature surely knew how to provide for it. See, *e.g., State v. Maguire, supra,* 84 *N.J.* at 520, 528.

Moreover, accepting the propriety of the sentences imposed in the instant appeals, defendants' sentences under the CDRA would most likely have been effectively the same as those imposed under Title 24 (*N.J.S.A.* 24:21–19b(1) and 24:21–20a(1)). The sale of less than one-half ounce of cocaine would have been classified under *N.J.S.A.* 2C:35–5b(3) as a third degree offense which subjects an offender to a term of imprisonment between three and five years in prison, *N.J.S.A.* 2C:43–6a(3), with a presumptive term of four years. *N.J.S.A.* 2C:44–1f(1)(d). Here, the judge evaluated the defendants and the offenses and stated that he was clearly convinced that the aggravating circumstances outweighed the mitigating circumstances. Hence, a five year term of imprisonment (the same as imposed here) would have been sustainable. Moreover, because the sentencing judge was clearly convinced that the aggravating factors outweighed the mitigating factors a parole disqualifier was imposable under *N.J.S.A.* 2C:43–6b. Hence, the sentence imposed here was sustainable under either Title 24 or under the CDRA.

We turn now to appellants' arguments that their sentences were improper and excessive. They argue that because they were first offenders there is a presumption of non-incarceration. *N.J.S.A.* 2C:44–1e establishes such a presumption when the offense is other than a first or second degree crime. Although the sentences here were imposed under Title 24, it has been held that the sentencing provisions of the Code apply insofar as practical to Title 24 violations. *State v. Sainz,* 107 *N.J.* 283, 286–287 (1987); *State v. Sobel,* 183 *N.J.Super.* 473, 478–479 (App.Div.1982). In *Sobel* we held that the non-incarceration presumption applies to a first time offender under Title 24. 183 *N.J.Super.* at 479–480.

The judge stated in sentencing Velez:

I will note that I have reviewed the aggravating and mitigating circumstances as set forth in NJS 2C:44–1. I find the only mitigating circumstance to be number seven, the fact that the defendant has no prior history. I did give some consideration to factor number ten, whether or not the defendant is likely to respond affirmatively to probationary treatment, and I really don't know about that one, so I can't say, in good conscience, that I believe it. I certainly find that number three, the risk that the defendant will commit another offense is very much involved in this case; number nine, the need to deter the defendant and others from violating the law, which I consider to be an extremely important factor in matters involving the distribution of drugs. I will have to say that since we're dealing with cocaine, and there's no evidence that it was, in any way, manufactured by this defendant, one would have to think that number five may well be a factor, namely, the likelihood that the defendant is involved in organized criminal activity. How does one get drugs except by being involved in some sort of organized criminal activity? So, I think that's a factor.

Therefore, considering all of those factors, I am satisfied and clearly convinced that the aggravating factors substantially outweigh the mitigating factors as set forth in subsections A and B of NJS 2C:44–1. Accordingly, I have directed that the defendant will not be eligible for parole for the period set forth in this sentence.

The judge stated when sentencing Negvesky:

I looked at the circumstances here involving the distribution. Again, you didn't work at the bank, but you were distributing there. As I look at the aggravating and mitigating circumstances, Mr. Negvesky, it seems to me and I'm satisfied that the aggravating factors substantially outweigh the mitigating circumstances, and that's clear to me, and, accordingly, I will direct that you shall not be eligible for parole for the period of time set forth in this sentence.

With respect to the suggestion that this may be something akin to a third degree offense for which there is a presumption of non-incarceration, pursuant to *N.J.S.A.* 2C:44–1(E), in my opinion, having regard to the nature and circumstances of the offense, the history and character of the defendant, especially the fact that he was arrested nine months before this incident on a drug deal again, but that wasn't enough to stop him, I'm of the opinion that your imprisonment is necessary for the protection of the public under the criterias [*sic*] set forth in Subsection A of NJS 2C:44–1(E).

In particular, as I look at the aggravating and mitigating circumstances, the only mitigating circumstance that I see, Mr. Negvesky, is number seven, the fact that you have no prior history of prior criminal activity. Even that is not clear. I think you probably do with respect to the marijuana charge. So, one can say that there are no mitigating circumstances.

Certainly, in my opinion, there's at least three aggravating circumstances, namely, the risk being you will commit another offense, number three, number five, again, considering the nature of the drugs involved, there's no question in my mind that this has something to do with organized criminal activity because you don't manufacture the drugs yourself, and certainly number nine very heavily weighs in my determination, the need to deter you and others from violating the law with respect to the use of drugs and what it is doing to our society.

Although Velez had no prior criminal record and had been honorably discharged from the navy, his drug history as contained in the presentence report indicated that he had smoked marijuana from the age of 17 to age 19, and at the age of 25 began the use of cocaine which continued up to his then present age of 28.

Negvesky's presentence report indicated that he was 21 at the time of sentence. It also indicated a May 1986 arrest for possession of 25 grams of marijuana for which he subsequently received a conditional discharge. He had said that he began using cocaine in 1986 after the death of his stepfather, and before that he would only use cocaine occasionally at parties. Negvesky said that "at the time of his arrest he was dependent on cocaine."

█ Our function in reviewing a trial court's sentence is defined in *State v. Sainz, supra,* 107 *N.J.* at 292. Although the sentencing judge may not have expressly stated the precise

legislative guidelines in *N.J.S.A.* 2C:44–1e, it is nonetheless clear that he considered and appropriately applied them. In evaluating the aggravating and mitigating circumstances the judge found only the lack of a prior criminal history as a mitigating circumstance. The judge concluded that based on the information he had available to him Velez was not likely to respond to probationary treatment. We are satisfied that the judge's finding of the various aggravating factors is supported by the record and we have no basis to disturb his exercise of discretion. See *State v. Sainz, supra* (107 *N.J.* at 293); *State v. Roth*, 95 *N.J.* 334 (1984).

The judge did expressly evaluate the presumption of non-incarceration in sentencing Negvesky and, based upon the criteria in *N.J.S.A.* 2C:44–1e, concluded that the presumption was overcome and that imprisonment was necessary for the protection of the public. Only one mitigating circumstance was found, Negvesky's lack of a prior criminal history. The judge did recognize that even this was not absolutely certain because the presentence report disclosed the May 1986 arrest for marijuana possession and the conditional discharge. Although Negvesky contends that the sentencing judge erred in finding the conditional discharge to be an aggravating circumstance, our reading of the record satisfies us that the judge did not use the conditional discharge in evaluating the aggravating circumstances, contrary to Negvesky's contention. The sentencing judge recognized that the fact that there was no prior criminal history would be a mitigating circumstance.

Negvesky also claims that there should have been a fact-finding hearing to resolve the issue of organized criminal activity. We reject Negvesky's arguments as without merit. *R.* 2:11–3(e)(2). It was abundantly clear to the trial judge, as it is to us, that Negvesky had to be obtaining the cocaine from other sources and was not manufacturing it himself. This is

sufficient to support the judge's reasoning. See *State v. Pych,* 213 *N.J.Super.* 446, 463 (App.Div.1986).

██ Negvesky also relies on *State v. Binns,* 222 *N.J.Super.* 583 (App.Div.1988) in arguing that the parole disqualifier was inappropriate in his case. In *Binns,* defendant was convicted of possession of approximately 63 grams of cocaine with intent to distribute. *Id.* at 586–587. On appeal, this court modified his six year sentence, including two years without parole eligibility, by eliminating the parole disqualifier. It was concluded that the ineligibility period had been applied contrary to the established principle that a period of parole ineligibility was the exception, not the rule. *Id.* at 596.

We find *Binns* inapposite here. In *Binns* only a single offense was involved and the evidence did not suggest ongoing sales of cocaine. Here, there was evidence to support the finding that Negvesky had engaged in the ongoing distribution of cocaine. He pled guilty to possession of cocaine with intent to distribute on two separate occasions and actually sold cocaine to an undercover officer on one of those occasions. He also pled guilty to conspiracy to distribute cocaine and there is at least a fair inference of involvement in organized criminal activity in the sense of being involved with others in the operation of procuring and distributing cocaine. With respect to the arguments raised by both defendants relating to the parole disqualifier we conclude that adequate reasons were given to support the judge's determinations and that there is a sufficient basis in the record for those sentences. *State v. Porter,* 210 *N.J.Super.* 383, 396–397 (App.Div.1986), certif. den. 105 *N.J.* 556–557 (1986). We are satisfied from our examination of the record and the arguments in the briefs that the sentences imposed were not excessive and there was no mistaken exercise of sentencing discretion. *State v. Roth, supra,* 95 *N.J.* at 363–365.

AFFIRMED.