USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 97-1998 UNITED STATES OF AMERICA, Appellee, v. STEPHEN F. KIVLEHAN, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Walter F. McKee with whom Lipman & Katz was on brief for _________________ _______________ appellant. Margaret D. McGaughey, Assistant United States Attorney, with ______________________ whom Gail F. Malone, Assistant United States Attorney, and Jay P. _______________ ______ McCloskey, United States Attorney, were on brief for appellee. _________ ____________________ February 27, 1998 ____________________ ALDRICH, Senior Circuit Judge. Defendant Stephen _____________________ F. Kivlehan, sentenced as an armed career offender pursuant to U.S.S.G. 4B1.4(b)(3)(A), whose conviction was under 18 U.S.C. 922(g) for, as a felon, being in possession of a firearm, appeals for evidentiary error; for not, as an indigent, being provided with funds for a psychiatric examination prior to sentencing; for the court's refusal to hold a competency hearing, and for its adding a point to his offense level for using the firearm in connection with a crime of violence. We affirm. Fingerprint Testing ___________________ Defendant was arrested after having alerted his neighbors by the noise of a vigorous sexual and physical assault on his wife. After receiving consent to search the premises, the police found a revolver that defendant's wife adequately connected with the incident, post. Witnesses at ____ trial testified to the uniqueness of the revolver, a specially built competition pistol, and to having seen defendant previously with his hands on it. However, it was returned from testing for prints with none of defendant's found. Over defendant's objection, a police detective was allowed to testify that in his twenty years experience, it was "very rare" to match positively a known set of prints with those found on a weapon -- in fact, he could recall no -3- case. The objection made was hearsay. This is an interesting question. The witness was speaking from his own experience, but the effect, perhaps, was to vouch for the accuracy of past reports or the testing process itself. In any event, this whole matter was not prejudicial. The revolver had a serial number. It was noted at the time of the arrest; the revolver at the trial had the same number. Also, four witnesses positively identified it, including both its prior owner as well as defendant's brother, a professional gunsmith. Of what consequence the absence of fingerprints? Given such overwhelming evidence, any error in admitting the detective's testimony was harmless. See United States v. Bartelho, 129 F.3d 663, 670 ___ _____________ ________ (1st Cir. 1997). We pass the question whether defendant himself first "opened the door" to this testimony. Mental Competency Testing _________________________ There was no claim that defendant was unable to stand trial, or that he had any mental defect defense. However, after trial, defendant's counsel asked for funds for psychiatric testing, pursuant to 18 U.S.C. 3006A(e)(1), and later moved to determine defendant's competency, pursuant to 18 U.S.C. 4241. His psychological condition, it was thought, would be relevant to where in the applicable range he should be sentenced and, also, whether downward departure under U.S.S.G. 5K2.13 (diminished capacity) could be had. -4- Counsel's most tangible basis was the fact that defendant would not communicate with him and rejected all his mail, returned unopened. Apart from that were little fragments, including general comments from defendant's mother and his probation officer about his apparent, lay-described "paranoia," and the argument that unless a test was made, how could it be known that it was not needed? Whether to authorize funds for psychological testing is within the trial court's discretion. Cf. United ___ ______ States v. Mateos-Sanchez, 864 F.2d 232, 239-40 (1st Cir. ______ ______________ 1988) (investigative expenses). Refusal is not reversible absent clear and convincing evidence of prejudice to the accused. See United States v. Canessa, 644 F.2d 61, 64 (1st ___ ______________ _______ Cir. 1981). A determination of competency may be had when there is reasonable cause to believe that the defendant, due to mental defect, is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. See 18 U.S.C. 4241. To be able ___ to assist in one's defense means to have a "sufficient present ability to consult with [one's] lawyer with a reasonable degree of rational understanding." United States _____________ v. Lebron, 76 F.3d 29, 31 (1st Cir.), cert. denied, 116 S. ______ ____________ Ct. 2537 (1996). Whether to hold a 4241 hearing is a matter within the trial judge's discretion, reviewable only -5- for abuse. See United States v. Morgano, 39 F.3d 1358, 1373 ___ _____________ _______ (7th Cir. 1994), cert. denied, 515 U.S. 1133 (1995). ____________ Given the posture, all defendant asked for, with evidence of incompetency, was a favorable exercise of discretion in sentencing. The court's refusal to pursue the matter, we think, indicates a disinclination to be any more favorable than it was. Further, the decision was based, in part, on observations of defendant's behavior during trial and sentencing. The record expressly reflects noted instances of communication between defendant and his counsel during the latter. We have reviewed the district court's findings "comprehensively," Lebron, 76 F.3d at 32; read the ______ record, and listened to, in effect, testimony from defendant's trial counsel, and we think the case well summed up by the court. If I thought for a minute that a competency exam or a psychiatric exam would in any way flush out any problems that may exist or be determinative of any issue here, I'd order it, but that's not the case in the court's humble opinion. And if I were to order competency exams on each one of these sentencing proceedings, there aren't enough psychiatrists and psychologists to accommodate all the competency exams. It is not unusual . . . for defendants, once they've gone through trial and are facing sentence, to develop all kinds of anxieties. . . . [I]t would be strange if they didn't. And I think that's what we have here, and I'm not a psychiatrist or a psychologist, but I'm not going to delay this matter any further on the basis of what I have before me now, -6- unless someone can convince me that it would be useful. And that, coupled with the defendant's request to get this matter over with, which is really what he wants to do I think, that's what I'm going to do. We find no abuse or prejudice. Offense Level _____________ Finally, defendant complains of the court's connecting the weapon to the assault. The import of the alleged error was assigning offense level 34 rather than 33, making the applicable sentencing range 262-327 months instead of 235-293. Under U.S.S.G. 4B1.4(b)(3)(A), the greater figure applies if the firearm was "used or possessed . . . in connection with a crime of violence." It is acknowledged that "'in connection with' should be interpreted broadly and that where a defendant's possession of a firearm aids or facilitates the commission of another offense, the requisite link is present." United States v. Thompson, 32 F.3d 1, 7 _____________ ________ (1st Cir. 1994) (footnote omitted). Reviewing the district court's findings for clear error, see United States v. Gary, 74 F.3d 304, 317 (1st ___ ______________ ____ Cir.), cert. denied, 116 S.Ct. 2567 (1996), we find none. ____________ The defendant had a history of threatening his wife, sometimes with firearms. During the events precipitating his arrest, he placed the gun on the floor of the apartment bedroom, openly visible. He glanced menacingly at the gun -7- and then his wife, which she understood to be a threat, as he attempted to have her facilitate a sexual encounter between him and another woman. When that failed, he compelled his wife to endure three hours of sexual and physical abuse, some of which occurred in the room with the gun. He repeatedly told her that, in her words, "You probably ain't going to make it through the night." She said she did not scream or cry out because she was scared "because there was a loaded gun right beside the bed." It is no stretch to conclude that the presence of the gun emboldened the defendant and, in part, threatened his victim into submission, and therefore "aid[ed] or facilitat[ed]" the assault. Thompson, 32 F.3d at ________ 7; cf. United States v. Sturtevant, 62 F.3d 33, 34 (1st Cir. ___ _____________ __________ 1995) (per curiam). Affirmed. _________ -8-