STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. GEORGE PETER BELLUCCI, DEFENDANT-RESPONDENT.

Argued October 22, 1979—Decided January 21, 1980.

532

534

*Mr. Blair R. Zwillman,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Blair R. Zwillman* and *Mr. Edwin H. Stern,* of counsel and on the brief).

*Mr. Harold J. Cassidy* argued the cause for respondent (*Messrs. Perkins & Cassidy,* attorneys).

The opinion of the court was delivered by

PASHMAN, J.

This case requires us to consider the presence of a conflict of interest in criminal representation and whether such conflict denies a defendant the effective assistance of counsel. The attorney who represented defendant in his prosecution for several gambling offenses also represented two co-defendants until just before they entered guilty pleas. His law partner represented another co-defendant at the joint trial. We hold that in the absence of an informed waiver by defendant, the potential for a conflict of interest by his attorney requires reversal of defendant's conviction and a new trial.

Surveillance of the premises at 16–18 Beacon Avenue in Jersey City by the New Jersey State Police Gambling Unit led to a raid on December 13, 1973. At about 4:30 p. m., Mildred Commandatore and Primas Johnson were arrested in the driveway of the building after Johnson was observed passing a paper bag to Mrs. Commandatore. The bag contained lottery slips and $280.50 in cash. The officers entered the premises pursuant to a search warrant and found defendant Bellucci seated at the

kitchen table. On the table were slips of paper containing names and amounts of money, an adding machine and a cellophane bag filled with more paper slips. The police arrested and searched Bellucci, seizing $456 from his person and $450 from the kitchen table.

Bellucci, Johnson, and Mildred Commandatore and her husband Anthony were subsequently indicted for violations of criminal statutes pertaining to the operation of a lottery. *N.J.S.A.* 2A:121–3(a), (b), (c) (now superseded by *N.J.S.A.* 2C:37–2, –3 & –4).

Bellucci's attorney, John P. Russell, Esq., was also counsel to the Commandatores in their unsuccessful bid for a bargained plea and until they pleaded guilty. Although James A. Galdieri, Esq., appeared for them when they entered their pleas, his first contact with them was that very day. Galdieri referred to Mr. Russell as "Mr. Commandatore's attorney" and as having represented Mrs. Commandatore in earlier negotiations.

Bellucci unsuccessfully moved to sever his trial from that of Johnson, the remaining co-defendant. At the joint trial, Bellucci admitted that he knew the Commandatores' home was being used for lottery purposes. His defense was that he was on the premises because Mildred Commandatore had asked him to come over to talk about her hospitalized brother, a longtime friend. Still awaiting sentencing, neither of the Commandatores testified at Bellucci's trial, and attorney Russell did not attempt to call them as witnesses.

Defendant Johnson also claimed that his activities had a legitimate purpose. His attorney, Dennis McAlevy, Esq., was Russell's law partner. During the trial the prosecutor referred to this association in the presence of the jury.

The jury found both defendants guilty as charged. Defendant Bellucci's motion for a new trial was denied, and Russell filed a notice of appeal on his behalf. Thereafter, a substitution of attorney was filed naming Mr. Galdieri as Bellucci's attorney of record, and the conflict of interest issue presented by the

Russell-McAlevy partnership was briefed and argued before the Appellate Division.[1] After oral argument, that court on its own motion expanded the conflict question to include consideration of Russell's prior representation of the Commandatores.

In ordering a new trial, 165 *N.J.Super.* 294 (1979), the Appellate Division noted the differing amounts of evidence incriminating the respective defendants. In the court's view the professional association of Bellucci's trial attorney with counsel for an "apparently guilty" co-defendant might have swayed the jury. 165 *N.J.Super.* at 300–301. The Appellate Division concluded that "[w]hile this circumstance alone might not warrant a reversal," when accompanied by Russell's prior representation of the Commandatores, the aggregate likelihood of resulting prejudice required a new trial. 165 *N.J.Super.* at 302–303.

The court found obvious "[t]he potentiality for less than thoroughly faithful and undivided attention to defendant's interests at the time of trial * * *." 165 *N.J.Super.* at 303. Observing that Bellucci's defense could have been bolstered by testimony of either or both Commandatores, the court inferred that the reason for Russell's failure to call them as witnesses could have been his interest in protecting the Commandatores before their sentencing. The court held that without Bellucci's waiver of his right to independent counsel, the existence of prejudice would be presumed. The court therefore found that defendant had been denied the effective assistance of counsel. 165 *N.J.Super.* at 304; *N.J.Const.* (1947), Art. I, par. 10.

We granted the State's petition for certification on the conflict of interest issue. 81 *N.J.* 49 (1979). We now affirm.

The Sixth Amendment to the Federal Constitution and Art. I, par. 10 of the New Jersey Constitution provide in nearly

---

[1]Counsel raised several other grounds on appeal, and the Appellate Division accordingly dismissed one count of Bellucci's indictment. The State's petition for certification presents only the effective assistance of counsel issue.

identical language that in a criminal prosecution the accused has the right to the "assistance of counsel" for his defense.[2] Mere literal compliance with these provisions would clearly frustrate the purpose and spirit of the right to counsel. Recognizing this, both the United States Supreme Court and this Court have repeatedly held that this fundamental guarantee of representation means the right to "effective assistance." See, *e. g., Glasser v. United States*, 315 *U.S.* 60, 62 *S.Ct.* 457, 86 *L.Ed.* 680 (1941); *State v. Land*, 73 *N.J.* 24 (1977). A defense attorney's representation must be "untrammeled and unimpaired," his loyalty undivided. See *Glasser v. United States*, 315 *U.S.* at 70, 62 *S.Ct.* 457; *State v. Land*, 73 *N.J.* at 31, 36; *State v. Green*, 129 *N.J.Super.* 157, 161 (App.Div.1974); *United States ex rel. Hart v. Davenport*, 478 *F.*2d 203, 209 (3d Cir. 1973). The constitutional effectiveness of counsel therefore depends on his adherence to those ethical standards which serve to maintain his independent professional judgment. See, *e. g., State v. Land, supra; United States v. Dolan*, 570 *F.*2d 1177 (3d Cir. 1978); *United States ex rel. Hart v. Davenport, supra;* see also *Wanat*, "Conflicts of Interest in Criminal Cases and the Right to Effective Assistance of Counsel—the Need for Change," 10 *Rut.– Cam.L.J.* 57 (1978). There is no greater impairment of a defendant's constitutional right to counsel than that which can occur when his attorney is serving conflicting interests. The resulting representation may be more harmful than the complete absence of a lawyer.

In this case we are asked to rule whether joint representation violates defendant's constitutional right to the effective assist-

[2]*N.J.Const.* (1947), Art. I, par. 10, provides in pertinent part: "In all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense." *U.S.Const.*, Amend. VI, provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." The Sixth Amendment applies to the states through the due process clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799 (1963).

ance of counsel. We recently expressed our disapproval of joint representation in *State v. Land, supra,* in which we held that the defense of a husband and wife against narcotics charges by a single attorney deprived the defendants of the effective assistance of counsel. Justice Schreiber's words bear repeating:

> The inherent difficulty in representing more than one defendant in a criminal proceeding and in steering a course which will promote the interests of each, but which will not be to the detriment of any one, exposes the infirmity of dual representation. [73 *N.J.* at 30]

The present case amply displays this "inherent difficulty" arising from two instances of joint representation. We deal first with Russell's representation of the Commandatores.

■ Russell's prior representation of the Commandatores presented a threat to Bellucci's right to effective counsel that we may not dismiss as harmless. The fact that Russell was no longer the Commandatores' attorney of record when they pleaded guilty does not rebut the presumption that Russell's effectiveness in representing Bellucci was impaired. A finding of a constitutionally suspect conflict arising from joint representation does not depend on a joint trial. See *United States ex rel. Sullivan v. Cuyler,* 593 *F.*2d 512 (3d Cir.1979), *cert.* granted *sub nom. Cuyler v. Sullivan,* —— *U.S.* ——, 100 *S.Ct.* 44, 62 *L.Ed.*2d 30 (1979); *United States v. Dolan, supra; State v. Boone,* 154 *N.J.Super.* 36 (App.Div.1977), certif. den., 77 *N.J.* 493 (1978).

■ As we announced in *Land,* a defendant's right to counsel mandates that "the attorney's position as an advocate for his client should not be compromised *before, during or after trial."* 73 *N.J.* at 29 (emphasis added). Accord, *United States ex rel. Hart v. Davenport,* 478 *F.*2d at 209–210; see also *Von-Moltke v. Gillies,* 332 *U.S.* 708, 720–721, 68 *S.Ct.* 316, 92 *L.Ed.* 309 (1948); *Williams v. Kaiser,* 323 *U.S.* 471, 475–476, 65 *S.Ct.* 363, 89 *L.Ed.* 398 (1945). The ethical duties an attorney owes a client attach at the outset of their relationship. Particularly important when examining joint representation is the lawyer's duty not to disclose his client's confidences or secrets even after the formal termination of that representation. *DR* 4–101.

■ The "inherent difficulty" referred to in *Land* is as present at the pretrial stage at it is when the joint representation occurs at trial. The pervasive practice of plea bargaining highlights the importance of the pretrial period in our criminal process. See Geer, "Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney," 62 *Minn.L.Rev.* 119, 125 (1978). To effectively advise his client as to what plea should be entered, defense counsel must be free to explore all possibilities, including pretrial negotiations. See *Holloway v. Arkansas*, 435 *U.S.* 475, 490, 98 *S.Ct.* 1173, 55 *L.Ed.2d* 426 (1978).

The conflict of interest stemming from Russell's pretrial representation of the Commandatores was not restricted to the period during which he was their attorney of record. Defendant Bellucci—and therefore his attorney, Russell—had an obvious interest in having the Commandatores corroborate his version of innocent presence at their home. The Commandatores—Russell's former clients—had an equally obvious interest in obtaining a lenient sentence. Their testimony for Bellucci's benefit, and particularly the resulting exposure to cross-examination, might have brought inculpatory evidence to the attention of their sentencing judge. Russell therefore placed himself in the same "impossible [position] of receiving and respecting confidential communications which may assist one defendant and harm another," created by multiple representation at trial. *State v. Land*, 73 *N.J.* at 30.

■ The formal termination of Russell's role as attorney for the Commandatores did not release him from his ethical duty to preserve their secrets and confidences. Indeed, Russell had a continuing obligation to refrain from doing *anything* against their interests. *DR* 4–101. Regardless of what their testimony might have been, Russell could not ethically call them as witnesses without their express permission. Thus, the eleventh hour substitution of Galdieri for the formal entering of the

Commandatores' pleas did nothing to remove the burden of Russell's conflict of interest from Bellucci's defense.

It is therefore clear that the potential for Russell to be less than a vigorous partisan for Bellucci existed in his continuing obligation to preserve the pretrial confidences and secrets of the Commandatores.

The second source of conflict is found in Russell's representation of Bellucci at the same trial in which his law partner represented co-defendant Johnson. The question is whether our constitutional guarantee of effective counsel is fully satisfied when two lawyers who are partners separately represent criminal co-defendants.

As a matter of professional responsibility, if an attorney is obligated to decline or withdraw from employment, his associates or partners may not accept. See *In re Opinion No. 415*, 81 *N.J.* 318, 322 (1979); DR 5–105(D); ABA Proj. on Standards for Criminal Justice, *Standards Relating to the Defense Function*, § 3.5(b) at 123 (1974) (hereafter *The Defense Function* ). Sound reasons exist for this rule. There is ready access to confidential information among members of a law firm. The close association of members heightens the risk of even inadvertent disclosure. Each partner's professional knowledge is justifiably imputed to the entire firm, regardless of actual disclosure. See, *e. g., Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 *F.*2d 1311, 1321 (7th Cir. 1978), *cert.* den., 439 *U.S.* 955, 99 *S.Ct.* 353, 58 *L.Ed.*2d 346 (1979). The shared economic interest of the entire firm in the clients of individual members also supports treating a partnership as one attorney. A financial stake in the outcome of a case is itself a source of conflict. See generally *NAACP v. Button*, 371 *U.S.* 415, 443, 83 *S.Ct.* 328, 9 *L.Ed.*2d 405 (1963). Perhaps most importantly, public confidence in the integrity of the Bar would be eroded if conduct proscribed for one lawyer could be performed by his

partner. See Note, "Professional Responsibility—Conflicts of Interest Between Legal Aid Lawyers," 37 *Mo.L.Rev.* 346 (1972).[3]

We note that as of September 10, 1979, our Rules Governing Criminal Practice prohibit individual attorneys and law firms from representing more than one defendant in a multi-defendant indictment without court permission. *R.* 3:8–2. Similarly, in *The Defense Function, supra* § 3.5(b) at 123, the American Bar Association suggests that "a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case * * *." The potential for conflict of interest in such representation is thought to be "so grave" that it should not be undertaken "except in unusual situations" in which clear indications exist that no conflict will develop, and then only with defendants' informed consent. *Id.* At least one commentator has called for revision of the ABA *Code of Professional Responsibility* "to prohibit joint representation in criminal cases by any individual lawyer or lawyers who are associated in practice," regardless of consent. Lowenthal, "Joint Representation in Criminal Cases: A Critical Appraisal," 64 *Va.L.Rev.* 939, 988 (1978).

█ To hold that the right to counsel is respected when each attorney formally represents only one defendant, without regard to counsel's professional relationships, would run counter to the ethical obligations imposed on lawyers working in concert. It would also give undue weight to the "mere physical presence" of a single attorney in assessing the effectiveness of counsel. See *Holloway v. Arkansas,* 435 *U.S.* at 489–490, 98 *S.Ct.* 1173. We

---

[3]These considerations have led courts to hold that the Sixth Amendment and a lawyer's professional responsibility are violated when two public defenders from the same office represent conflicting interests, even in the absence of the economic consideration present when a private firm is involved. *Borden v. Borden* (D.C.Ct.App.1971); *Turner v. State,* 340 *So.*2d 132 (Fla.Dist.Ct.App.1976).

therefore conclude that a partnership must be considered as a single attorney in determining whether a defendant had received the effective assistance of counsel.

In this case the State does not contest the fact that Russell was involved in a conflict of interest. On the contrary, it claims that there was a flagrant disregard of the canons of professional responsibility. However, the State contends that "[a]bsent specific prejudice, a conviction should not be reversed on the basis of 'conflict' unless the same attorney represented more than one defendant at trial." We disagree and adhere to the principle stated in *Land*: once a potential conflict exists, prejudice will be *presumed* in the absence of waiver, 73 *N.J.* at 35, even if associated attorneys are involved instead of the same attorney.

Such a presumption is necessary to protect adequately the "fundamental and absolute" right to effective assistance of counsel. See *Glasser v. United States*, 315 *U.S.* at 76, 62 *S.Ct.* 457. In *Holloway v. Arkansas*, the United States Supreme Court rejected a proposal similar to the State's here as "not be susceptible of intelligent, even-handed application." 435 *U.S.* at 490, 98 *S.Ct.* at 1182. The harm in dual representation is caused by the restraints placed on an attorney's advocacy and independent judgment. It is one of divided loyalties. At its extreme, such conflict may prevent counsel from attempting to exonerate one client when doing so would require him to demonstrate that another client is guilty. The harmful effects of a conflict of interest—what counsel must refrain from asserting—will not ordinarily be identifiable on the record. See *Lollar v. United States*, 126 *U.S.App.D.C.* 200, 203, 376 *F.2d* 243, 246 (D.C.Cir. 1967) ("Like the famous tip of the iceberg, the record may not reveal the whole story * * *."). Requiring a showing of prejudice would place an impossible burden on the accused and force the reviewing courts to engage in "unguided speculation." *Holloway v. Arkansas*, 435 *U.S.* at 491, 98 *S.Ct.* 1173. See

*United States ex rel. Sullivan v. Cuyler,* 593 *F.*2d at 520; *State v. Ebinger,* 97 *N.J.Super.* 23, 27 (App.Div.1967). A court inquiry to determine actual prejudice might itself conflict with, or be impeded by, the attorney-client privilege. On occasion, the critical issue might concern counsel's reason for a particular trial tactic, perhaps forcing him to choose between candor to the court and duty to his client.

As we recognized in *Land,* "parties may surrender their constitutional right to independent counsel." 73 *N.J.* at 32. However, there is a strong presumption against waiver of fundamental rights. *Glasser v. United States,* 315 *U.S.* at 70, 62 *S.Ct.* 457; *Johnson v. Zerbst,* 304 *U.S.* 458, 58 *S.Ct.* 1019, 82 *L.Ed.* 1461 (1938); *State v. Green,* 129 *N.J.Super.* at 161. In no event is waiver to be found from a silent record. See *Government of Virgin Islands v. Hernandez,* 476 *F.*2d 791 (3d Cir. 1973). As in *Land,* there is no evidence here of "an intelligent and competent expression" that defendant intended to forego this right. 73 *N.J.* at 34.

Protecting the rights of defendants and the integrity of the judicial process is an obligation our system imposes on both lawyers and judges. To secure these interests, the procedure outlined in *Land* must be followed in situations like that presented here. Whenever the same counsel—including partners or office associates—represents more than one defendant, both the attorney and the trial court must explain the possible consequences of joint representation to each defendant.

Attorneys are ethically obligated to disclose fully to their clients the possible effects of multiple representation, not merely the fact of employment. *DR* 5–105(C); see also *The Defense Function, supra,* § 3.5(a), (b) at 123. Counsel must decline or withdraw from employment if one client may be adversely affected by representation of another client. *DR* 5–105(B); *DR* 2–110(B)(2); see also DR 1–102(A)(5).

■ The trial court is equally obligated to protect defendants' rights to the effective assistance of counsel. When multiple representation is involved, the situation must be explored on the record both to ensure that defendant is aware of the potential hazards and to secure a proper waiver. *Glasser v. United States*, 315 *U.S.* at 70, 62 *S.Ct.* 457; *State v. Land*, 73 *N.J.* at 35, 372 *A.2d* 297; *State v. Green*, 129 *N.J.Super.* at 164; *United States v. Dolan*, 570 *F.2d* at 1181–1182; *United States v. Carrigan*, 543 *F.2d* 1053, 1055 (2d Cir. 1976); *United States v. Garcia*, 517 *F.2d* 272, 278 (5th Cir. 1975); *Campbell v. United States*, 122 *U.S.App.D.C.* 143, 144, 352 *F.2d* 359, 360 (D.C.Cir. 1965). See also ABA Proj. on Standards for Criminal Justice, *Standards Relating to the Function of the Trial Judge*, § 3.4(b) at 171 (1974).

■ In this case neither the attorney not the trial court has fulfilled its obligation to the defendant.[4] We hold that he has been denied the effective assistance of counsel and therefore a new trial is required.

We recognize that our rule amounts to an absolute bar to multiple representation unless defendants are fully advised of the potential problems involved. While other courts have not chosen to follow this route when interpreting the Sixth Amendment,[5] we are convinced that it is necessary to give full meaning

---

[4]The only indication of judicial awareness of any potential problem in Russell and McAlevy representing co-defendants is a notation on the case file in the Hudson County Clerk's Office stating that no conflict existed.

[5]See, e. g., *United States v. Lawriw*, 568 *F.2d* 98, 103 (8th Cir. 1977), *cert. den.*, 435 *U.S.* 969, 98 *S.Ct.* 1607, 56 *L.Ed.2d* 60 (1978); *Haggard v. Alabama*, 550 *F.2d* 1019, 1022 (5th Cir. 1977); *State v. Rogers*, 110 *Ariz.* 582, 521 *P.2d* 1128, 1130 (Sup.Ct.1974); *People v. Macerola*, 47 *N.Y.2d* 257, 417 *N.Y.S.2d* 908, 391 *N.E.2d* 990, 993 (Ct.App.1979). However, some courts have held that in the absence of sufficient inquiry by the trial court into the circumstances of multiple representation, the burden of persuasion will shift to the government. See *United States v. Carrigan*, 543 *F.2d* at 1056; *Ford v. United*

to our State constitutional guarantee of the effective assistance of counsel.

The Appellate Division apparently permitted either Russell or McAlevy to represent Bellucci at the new trial. This would be inconsistent with defendant's assertion that such representation presumptively deprived him of his right to the assistance of counsel. By appealing his conviction, he has committed himself to obtaining counsel other than Russell or McAlevy for the new trial. We similarly conclude that in light of Galdieri's representation of the Commandatores at the time of their guilty pleas, a potential for conflict of interest exists which would make it improper for him to represent Bellucci at the new trial.

So modified, the judgment of the Appellate Division is affirmed.

HANDLER, J., concurring.

I agree with the result reached by the Court in this case. Under the circumstances, Bellucci was denied the effective assistance of counsel because his trial attorney was involved, realistically, in a situation fraught with professional conflict, which made it unlikely that he could fully represent his client with the singleness of responsibility and undivided loyalty expected of an effective attorney. Nevertheless, I am troubled by the apparent resort to a per se categorization of multiple representation as constituting ineffective assistance of counsel and a constitutional denial of that right. The acceptance of this *per se* categorization, characterized by the Court today as in effect "an absolute bar to multiple representation unless defendants are fully advised of the potential problems involved," *ante* at 673, is not warranted. There is, in my view, a sounder and more

*States*, 126 *U.S.App.D.C.* 346, 348, 379 *F.2d* 123, 125 (D.C.Cir.1967); *Lollar v. United States*, 126 *U.S.App.D.C.* at 204, 376 *F.2d* at 247; *United States v. Foster*, 469 *F.2d* 1, 5 (1st Cir. 1972).

balanced approach, that is, where a potential conflict of interest is shown under circumstances generating a strong likelihood of actual prejudice to the defendant, the presumption of both an actual conflict of interest and actual prejudice will arise, with such prejudice not having otherwise to be specifically proved.

*State v. Land*, 73 *N.J.* 24 (1977), relied on here by the Court, *ante* at 543, supports this preferred approach. In *Land*, the attorney's conflict of interest was not potential, but rather was "apparent," and the actual prejudice to a defendant was "obvious." 73 *N.J.* at 36. See *State v. Ebinger*, 97 *N.J.Super.* 23, 27 (App.Div.1967), where the court, in reversing defendant's conviction on the basis of ineffective assistance of counsel, found that there had been a "substantial" conflict of interest, a fact which the State had conceded. The *Ebinger* court noted that the codefendants, "at the time of trial, had substantially conflicting interests, and counsel could not serve the best interests of both of them at the same time." 97 *N.J.Super.* at 25. See, *e. g.*, *State v. Green*, 129 *N.J.Super.* 157, 164 (App.Div.1974) ("clear" prejudice due to the multiple representation appeared in the record and thus necessitated retrial); *U. S. ex rel. Sullivan v. Cuyler*, 593 *F.*2d 512, 519 (3 Cir. 1979), *cert.* granted *sub nom. Cuyler v. Sullivan*, —— *U.S.* ——, 100 *S.Ct.* 44, 62 *L.Ed.*2d 30 (1979).[1]

Such a conditionally presumptive rule would avoid the rigidity necessarily resulting from an absolute rule. It would adequately ensure the protection of the defendant's constitutional right to effective assistance of counsel, *U.S.Const.* Amend. VI; *N.J.*

---

[1] Subsequent to the date of this decision, the United Stated Supreme Court decided *Cuyler v. Sullivan* —— U.S. ——, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), vacating the judgment of the Third Circuit and remanding for further factual findings. The Court did, however, affirm the appellate court's holding as to multiple representation in the following language: "We hold that the possibility of conflict is insignificant to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." 100 S.Ct. at 1718.

*Const.* (1947), Art. I, par. 10. At the same time it would serve to vindicate the integrity of the criminal justice system in those cases in which a conviction is fairly founded and not truly tainted by trial counsel's encumbered or diluted representation of his client.

Applying this balances approach to the facts in the present case would nevertheless not alter the outcome insofar as Bellucci is concerned. A potential conflict of interest was here shown under circumstances generating a strong likelihood of actual prejudice. The presumption of actual conflict of interest and actual prejudice was therefore created, which presumption was not sufficiently rebutted. Defendant Bellucci was thus denied the effective assistance of counsel, and a new trial is required accordingly.

HANDLER, J., concurring in the result.

*For affirmance as modified*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.