784 A.2d 91

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. NEAL MURRAY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 23, 2001—Decided November 14, 2001.

Before Judges PRESSLER, WEFING and PARRILLO.

*Peter A. Garcia,* Acting Public Defender, attorney for appellant (*Kevin G. Byrnes,* Designated Counsel, of counsel and on the brief).

*John J. Farmer, Jr.,* Attorney General, attorney for respondent (*Catherine A. Foddai,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

This is an appeal from the denial of post-conviction relief (PCR) after an evidentiary hearing mandated by the Supreme Court in this case, *State v. Murray,* 162 *N.J.* 240, 744 *A.*2d 131 (2000), to determine whether defendant's trial attorney had a conflict of interest which deprived defendant of the effective assistance of counsel. We affirm.

Defendant Neal Murray and co-defendant John Sheil were indicted on October 15, 1985 for first-degree robbery while armed, *N.J.S.A.* 2C:15–1 and 2C:2–6 (counts one, two and three); first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a and 2C:2–6 (count four); second-degree possession of weapons, handguns, with the purpose to use them unlawfully, *N.J.S.A.* 2C:39–4a and 2C:2–6 (count five); and third-degree possession of a weapon, a knife, with the purpose to use it unlawfully, *N.J.S.A.* 2C:39–4d and

2C:2–6 (count six). Sheil pled guilty to first-degree robbery and agreed to testify for the State at defendant's trial, in exchange for which the State agreed to recommend that Sheil be sentenced to a custodial term of fifteen years with a seven and one-half year period of parole ineligibility. Sheil was sentenced after defendant's trial.

Defendant elected to go to trial. Tried to a jury, defendant was convicted on all counts. After appropriate mergers,[1] defendant was sentenced on March 4, 1988 to concurrent twenty-year terms of imprisonment with ten years of parole ineligibility on the aggravated sexual assault (count four) and two first-degree robberies (counts one and two). The aggregate sentence was to be served consecutively with a separate sentence imposed on an unrelated indictment.

The judgment of conviction was affirmed in an unreported decision, A–3725–87T7, on December 28, 1988. In that decision, we offered the following summary:

> The convictions arose from the armed robbery of a Pizza Hut restaurant in Hamilton Township by two armed men dressed in ski masks. Defendant's guilt was overwhelmingly proved by the testimony of his confederate, amply confirmed by defendant's own statements and real evidence in the form of weapons and loot recovered from defendant, a ski mask and gloves found nearby when he was arrested and a revolver and ski mask were recovered from his confederate [John Sheil].

> [*State v. Murray*, No. A–3725–87T7 (App.Div. Dec. 28, 1988).]

The Supreme Court denied certification in an order filed February 9, 1989. The United States Federal District Court for the District of New Jersey denied a writ of habeas corpus on August 14, 1990. *Neal Murray v. John Rafferty*, Civil No. 89–2650 (D.N.J. August 14, 1990).

---

[1] At sentencing, the trial judge merged defendant's conviction on count five into defendant's conviction on counts one, two, and three. Defendant's conviction on count six was merged into the convictions on counts one and four. His conviction on count three was merged into the convictions on counts one and two.

Defendant filed the present post-conviction relief (PCR) application on December 10, 1995. He claimed, among other things, that he received ineffective assistance of counsel in that (1) his trial attorney never communicated to him a favorable plea offer received prior to trial and (2) his trial counsel had a conflict of interest based on the fact that during defendant's trial, counsel shared office space and a telephone number with the attorney for co-defendant John Sheil. The motion judge dismissed the PCR petition as time-barred, having been filed seven years and nine months after defendant's conviction. *R.* 3:22–12. The judge also found no excusable neglect for the delay, but he nonetheless addressed the merits of defendant's substantive claim and concluded that defendant failed (1) to show the attorneys were sufficiently connected to support a claim of conflict under *State v. Bellucci,* 81 *N.J.* 531, 410 *A.*2d 666 (1980), and (2) to establish ineffective assistance of counsel under *Strickland v. Washington,* 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984), and *State v. Fritz,* 105 *N.J.* 42, 519 *A.*2d 336 (1987).

In a reported opinion, we reversed. *State v. Murray,* 315 *N.J.Super.* 535, 719 *A.*2d 190 (App.Div.1998). Contrary to the motion judge's finding, we held that a potential attorney conflict of interest did in fact exist that rendered the defendant's sentence illegal, thus excusing the thirty-three month delay in filing the PCR petition under *R.* 3:22–12. The Supreme Court granted the State's petition for certification, 158 *N.J.* 75, 726 *A.*2d 938 (1999), and then modified and affirmed our judgment. *State v. Murray,* 162 *N.J.* 240, 744 *A.*2d 131 (2000). The Court held that an attorney conflict of interest does not render the sentence "illegal," but nevertheless agreed that defendant was entitled to an evidentiary hearing to determine whether a conflict of interest existed that created a presumption of prejudice. In ordering a remand, the Court directed thus:

> If on the remand the trial court is convinced that an attorney conflict of interest existed that created a presumption of prejudice, the court should apply the injustice exception in *Rule* 1:1–2 and *Rule* 3:22–4(b) to overcome the five-year time limit of *Rule* 3:22–12 ... If the Court determines that the injustice or extenuating

circumstances exception applies, it must then decide whether defendant was deprived of effective assistance of counsel.

[162 *N.J.* at 251, 744 *A.*2d 131.]

A hearing was held before the PCR judge on April 3, 2000 to determine the full extent of the alleged conflict of interest between defendant's trial counsel, Jules Kollar, Esq., and his co-defendant's counsel Nicholas Stroumtsos, Jr., Esq. Actually, as of the date of his indictment on October 15, 1985, defendant was represented by another attorney, Francis Hartman, Esq. In fact, in February 1986, Hartman had represented defendant in entering guilty pleas that disposed of four other armed robbery charges in other counties, for which defendant received an aggregate sentence of twenty years imprisonment with seven and one-half years of parole ineligibility. Hartman ceased his representation of defendant sometime in June 1987, and in August 1987 defendant retained Jules Kollar to represent him on the present charges. As noted, Nicholas Stroumtsos represented co-defendant John Sheil who, on April 8, 1987, pled guilty to one robbery count of the indictment and agreed to testify for the State at defendant's trial in exchange for the State's recommendation of a fifteen-year custodial term with a seven and one-half-year parole bar.

The evidence adduced at the April 3, 2000 hearing fairly supports the findings of the PCR judge as to the nature of the relationship between Kollar and Stroumtsos prior to Kollar's representation of defendant. The PCR judge found thus:

Nicholas Stroumtsos practiced at 53 Patterson Street, New Brunswick, and sometime around 1985 he moved his offices to the second floor of 55 Patterson Street, a building owned by his father to whom he paid rent. Roger W. Daley ... worked as an associate in Stroumtsos' office. Daley's name appeared on the letterhead.

In 1986 Jules Kollar rented space in the suite occupied by Stroumtsos and Daley. Although Kollar's name was placed on Stroumtsos' letterhead as an associate,[2] he was not, in fact, an associate. Initially, Kollar did not pay rent for the office which he occupied. He did not do per diem work for Stroumtsos, but on occasion he would "cover" for Stroumtsos. Kollar paid the salary of his own secretary, who

---

[2] In fact, the record is unclear as to whether Kollar was actually on the letterhead.

occupied an office with Stroumtsos' secretary. The lawyers had a common telephone number so that secretaries often answered the phone and took messages for attorneys other than their own employer. Ordinarily, typing was done only by a lawyer's own secretary, but in a pinch it might be done by another lawyer's secretary. Stroumtsos and Kollar maintained their own file cabinets, which were kept in the common secretarial area. Stroumtsos did not employ Kollar, did not pay him any money, and although Kollar's name appeared on the letterhead, Stroumtsos did not consider him an associate. Stroumtsos explained that he was merely attempting to give a young lawyer an opportunity to start a practice. On those occasions when Kollar would "cover" for Stroumtsos, he did it as a matter of courtesy and no money changed hands.[3]

The evidence at the PCR hearing also demonstrated that on May 1987, shortly after Sheil's guilty plea and several months before his representation of defendant, Kollar started his own firm while continuing to rent office space from Stroumtsos. Kollar contributed to the utilities and telephone charges in addition to the rent associated with his occupancy. From that time on, he no longer "covered" cases for Stroumtsos. Kollar obtained his own stationery with his own letterhead. Although his secretary and Stroumtsos's continued to take messages for both attorneys, they had separate, stand-alone work stations unattached to any network and worked independently of each other. And while Kollar continued to use the same phone line as Stroumtsos for some time after May 1987, by May 1988, one year later, Kollar maintained his own telephone number.

At all times, both before and during his representation of defendant, Kollar maintained separate files and separate checking and trust accounts. Kollar and Stroumtsos never shared files and each kept his files in his own filing cabinet.

Shortly after Kollar and defendant discussed representation, Kollar learned for the first time that Stroumtsos represented co-defendant Sheil, who had struck a deal with the State in April 1987 to testify against defendant. Kollar spoke with defendant

---

[3] For instance, when scheduling allowed, if Kollar were handling his client's arraignment, as a matter of convenience he might also handle an arraignment for Stroumtsos's client.

several times about the potential conflict and, on July 22, 1987, wrote to defendant advising:

[T]hat your co-defendant, John Sheil was and is represented by Nicholas Stroumtsos, Esq. Up until early May of this year, I was associated with Mr. Stroumtsos. I am now in practice alone. I understand that if your Mercer indictment goes to trial, there is a strong possibility that Mr. Sheil will testify against you. I bring all of this to your attention so that we and the Court may avoid any problems with conflict of interest or dual representation.

In response to this correspondence, defendant signed an acknowledgment prepared by Kollar that read: "I, Neal Murray having been advised of my rights of the past association of Jules G. Kollar, Esq., and Nicholas Stroumtsos, Esq., voluntarily, knowingly desire to have Mr. Kollar represent me in this matter." However, it does not appear that Kollar advised defendant of the requirements of *R.* 3:8–2, namely that court approval must be secured before an attorney or law firm enters an appearance for or represents more than one defendant in a multi-defendant indictment.

Defendant's trial proceeded in January 1988. In his original PCR application, defendant claimed that Kollar provided ineffective assistance in failing to communicate to defendant a favorable plea offer received from the State on the first day of trial. According to defendant, this latest plea offer required him to plead guilty to only one count of armed robbery with a sentencing recommendation of fifteen years and a seven and one-half year parole bar without recommendation that it would run concurrently or consecutively to his present sentences. Defendant claimed he would have accepted this proposal had he been so apprized because it was much more favorable than the initial offer entailing pleas to four counts of armed robbery and one count of sexual assault with a forty-year term and twenty-year minimum parole ineligibility period.[4]

---

[4] According to defendant, the favorable plea offer would have resulted in an aggregate sentence of thirty-five years with a fifteen-year period of parole ineligibility, whereas upon his conviction of the present charges, defendant's

At the April 3, 2000 PCR evidentiary hearing, Kollar acknowl-
edged that on the day of trial, the prosecutor communicated a plea
offer to him; however, he claimed that, from prior discussions
with defendant, defendant was not interested because defendant
wanted a guarantee that the additional time he would have to
serve under the proposed plea would run concurrent to his sen-
tences on previous out-of-county armed robbery convictions, and
the State could not offer this guarantee. Kollar testified that he
presented to, and discussed with, defendant the best plea offer
received from the State, and that he explained to defendant the
consequences of accepting the plea offer in terms of incarceration.
The plea offer was rejected and thus, when the subject was
broached on the record, Kollar informed the trial judge that there
was no point in discussing a new plea offer.[5]

After reviewing the facts, the PCR judge determined, on the
ineffective assistance of counsel claim attributable to the alleged
conflict of interest, that the attorneys' office sharing arrangement
was not a partnership or association and did not give rise to a
conflict of interest creating a presumption of prejudice. He
reasoned thus:

> [T]hat although attorneys Kollar and Stroumtsos shared a suite, they were never
> true associates in the practice of law, neither being dependent upon the other for
> any form of income. Their office sharing arrangement was not uncommon and
> does not bespeak *per se* a bond that could be termed a partnership or an
> association. Each maintained his own files; each paid his own secretary, and each
> maintained his own bank account. The fact that the secretaries assisted each
> other's employer is of little consequence. Kollar and Stroumtsos had separate
> practices.

On the ineffective assistance of counsel claim grounded on the
alleged failure to communicate the favorable plea offer, the PCR
judge found the testimony of Kollar more credible and concluded

aggregate sentence totaled forty years with a seventeen and one-half year parole
bar.

[5] At trial, when asked if he had discussed the new plea offer with defendant,
Kollar replied, "[n]ot really," and explained that defendant had not been inter-
ested in discussing the offer with him.

that defendant had not demonstrated that Kollar failed to convey the plea offer to him; rather, the judge was "satisfied that the plea offer was in fact extended to the defendant." The judge reasoned that in light of defendant's previous experience with plea offers in his prior armed robbery convictions, "he knew what he was doing when he decided to go to trial." Consequently, the judge denied defendant's PCR petition.

On appeal, defendant raises the following issues:

THE DEFENDANT'S ATTORNEY'S CONFLICT OF INTEREST DEPRIVED THE DEFENDANT OF THE UNDIVIDED LOYALTY OF COUNSEL AS REQUIRED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 10 OF THE NEW JERSEY CONSTITUTION.

A. THE WORKING RELATIONSHIP BETWEEN STROUMTSOS AND KOLLAR AT THE TIME SHEIL RETAI[N]ED STROUMTSOS TO REPRESENT HIM IN THE SHEIL–MURRAY CASE PRECLUDED KOLLAR FROM REPRESENTING MURRAY IN THAT SAME SHEIL–MURRAY CASE; THE DEFENDANT WAS PRESUMTIVELY [sic] PREJUDICED BY KOLLAR'S REPRESENTATION.

B. THE TRIAL COURT'S FINDINGS OF FACT WERE INCOMPATIBLE WITH THE RECORD AND ITS CONCLUSIONS OF LAW WERE ERRONEOUS.

C. TRIAL COUNSEL FAILED TO SECURE A VALID WAIVER OF THE ATTORNEY CONFLICT OF INTEREST.

D. THE REPRESENTATION OF MURRAY BY KOLLAR GAVE RISE TO AN APPEARANCE OF IMPROPRIETY THAT WARRANTS REMEDIAL ACTION BY A REVIEWING COURT.

A defendant's Sixth Amendment right to the effective assistance of counsel includes representation "unimpaired" by conflicting interests or divided loyalties. *State v. Norman,* 151 *N.J.* 5, 23, 697 *A.*2d 511 (1997); *State v. Bellucci,* 81 *N.J.* 531, 538, 410 *A.*2d 666 (1980); *State v. Land,* 73 *N.J.* 24, 35–36, 372 *A.*2d 297 (1977). The classic case of conflict of interest is "when the same attorney or partnership represents both parties to an action or two defendants in a criminal case and no waiver is obtained." *State v. Murray,* 162 *N.J.* 240, 250, 744 *A.*2d 131 (2000). *See also Norman, supra,* 151 *N.J.* at 25, 697 *A.*2d 511; *Bellucci, supra* (finding impermissible conflicts with respect to both the attorney's prior representations of a defendant and two co-defendants in the

same gambling case and the attorney's partner's continued representation of yet another co-defendant in the same action and at a joint trial). In such cases, a per se conflict of interest arises and prejudice will be presumed absent a valid waiver. *Norman, supra,* 151 *N.J.* at 24–25, 697 *A.*2d 511; *Bellucci, supra,* 81 *N.J.* at 541–43, 410 *A.*2d 666. *Cf. Land, supra,* 73 *N.J.* at 36, 372 *A.*2d 297 (finding joint representation by a private attorney of husband and wife in a criminal matter to have "apparent" potential for conflict and finding prejudice to be "obvious"). In other words, actual prejudice need not be shown where there is joint representation by private law partners in the absence of a waiver. *Bellucci, supra,* 81 *N.J.* at 541–43, 410 *A.*2d 666. The harm in such dual representation is caused by the "restraints placed on an attorney's advocacy and independent judgment." *Id.* at 543, 410 *A.*2d 666.

However, "not every potential attorney conflict rises to such an unacceptable level that it deprives a defendant of the right to effective assistance of counsel." *Murray, supra,* 162 *N.J.* at 249–50, 744 *A.*2d 131. Nor do all forms of association among attorneys give rise to the presumption of prejudice. In *State v. Bell,* 90 *N.J.* 163, 447 *A.*2d 525 (1982), our Supreme Court refused to apply *Bellucci's* per se rule to the representation of co-defendants in the same criminal action by separate attorneys of the Public Defender's Office, finding that such an association did not give rise to the presumption of prejudice. The Court in *Bell* concluded that where circumstances "demonstrate a potential conflict of interest and a *significant likelihood* of prejudice, the presumption of both an actual conflict of interest and actual prejudice will arise, without the necessity of proving such prejudice." *Id.* at 171, 447 *A.*2d 525 (emphasis added).

In *Norman,* the Court once again read the *Bellucci* holding narrowly and refused to apply its per se rule to cases beyond those in which attorneys are clearly associated in practice. 151 *N.J.* at 30, 697 *A.*2d 511. Outside these "well-defined cases," the *Norman* Court applied the "more flexible approach" devised in *Bell. Id.* at 25, 30, 697 *A.*2d 511. In examining the conflict of

interest and evaluating the likelihood of prejudice, the Court in *Norman* found that the partnership negotiations and shared office space arrangement in that case did not give rise to a presumption of prejudice where the attorneys otherwise conducted their affairs separately by having "separate phones, secretaries, files, and bank accounts." 151 *N.J.* at 26, 697 *A.*2d 511. And in the very case at hand, our Supreme Court, in ordering an evidentiary hearing, instructed the PCR judge, in his determination whether a conflict of interest existed that would have created a presumption of prejudice, to look for the same indicia of affiliation that it employed in *Norman, i.e.,* "the status of [the attorneys'] finances, files, secretaries, bank accounts, and contracts." *Murray, supra,* 162 *N.J.* at 250, 744 *A.*2d 131.

As noted, the PCR judge found that the nature of the relationship between Kollar and Stroumtsos was not, of itself, a source of conflict. We agree.

■ As a threshold matter, our review of a trial court's evaluation of competing evidence as to the existence of attorney conflict of interest is limited to deciding whether the findings could reasonably have been reached on sufficient or substantial credible evidence in the record, considering the proof as a whole. *Norman, supra,* 151 *N.J.* at 26, 697 *A.*2d 511. In the present case, there was ample evidence to support the court's finding that no attorney conflict of interest existed.

■■ Kollar and Stroumtsos were neither partners nor otherwise similarly associated. Their relationship, as testified to by both, was an informal and loosely structured arrangement wherein Stroumtsos offered Kollar the use of some office space out of a desire to help a young attorney, and Kollar reciprocated by occasionally covering for Stroumtsos. The sharing of office space alone does not give rise to attorney conflict of interest. *Murray, supra,* 162 *N.J.* at 250, 744 *A.*2d 131; *Norman, supra,* 151 *N.J.* at 26, 697 *A.*2d 511; *State v. Grice,* 109 *N.J.* 379, 385, 537 *A.*2d 683 (1988); *Bell, supra,* 90 *N.J.* at 169–71, 447 *A.*2d 525.

Although Kollar and Stroumtsos shared office space, there was no shared economic interest. Kollar depended on Stroumtsos for neither income nor clients. On the contrary, Kollar generated his own clients and retained the fees as his earnings. He did not do per diem work or handle cases for Stroumtsos. On occasion, out of convenience and courtesy, Kollar would enter pro forma appearances at arraignments of Stroumtsos's clients as a temporary fill-in when Stroumtsos could not attend. However, this was the extent of Kollar's "covering" for Stroumtsos, and it never gave rise to actual representation of Stroumtsos's clients. *Cf. Norman, supra*, 151 *N.J.* at 27–28, 697 *A.*2d 511.

And despite sharing office space, Kollar and Stroumtsos otherwise "kept their affairs separate." *Id.* at 26, 697 *A.*2d 511. At all times, they operated independently of each other, maintaining separate client and case files, and business and financial accounts. Although at the outset Kollar may have shared office supplies and secretarial help, and possibly may have been listed on Stroumtsos's letterhead, certainly by May 1987 and well before his representation of defendant, Kollar had established his own firm, hired his own secretary, and was paying his own way. In a word, Kollar and Stroumtsos conducted their affairs separately.

There being no close association and therefore no actual conflict giving rise to a presumption of prejudice, we next determine whether there was any significant likelihood of prejudice from the nature of the attorneys' relationship that did exist. Here again the PCR judge found none and we agree. There was no sharing of information or files, no mutuality of economic interest, no financial dependency, and no ready access to confidential information. *See State v. Norman, supra*, 151 *N.J.* at 29, 697 *A.*2d 511. Under the circumstances, we find no potential conflict sufficient to generate a significant likelihood of prejudice.[6]

---

[6] Having found no per se conflict of interest or likelihood of prejudice giving rise to a presumption of prejudice, the requirement for a waiver on the record does not arise. *Bellucci, supra*, 81 *N.J.* at 544, 410 *A.*2d 666.

■ Nor is there any appearance of impropriety in Kollar's representation of defendant. Rule of Professional Conduct 1.7(c) forbids an attorney from representing a client in a situation that would create an appearance of impropriety, even if there were no actual conflict:

in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

[*R.P.C.* 1.7(c)(2)(2002).]

■ The appearance of impropriety "alone may be sufficient to present an ethical problem even though no actual impropriety exists." *Higgins v. Advisory Comm. on Prof'l Ethics,* 73 *N.J.* 123, 129, 373 *A.*2d 372 (1977). The doctrine's purpose is "to bolster the public confidence in the integrity of the legal profession." *State v. Catanoso,* 222 *N.J.Super.* 641, 648, 537 *A.*2d 794 (Law Div.1987) (citing *In re Cipriano,* 68 *N.J.* 398, 346 *A.*2d 393 (1975)). Despite a movement to rescind the rule, the Supreme Court recently decided to retain it, at least for the time being. *See* Mary P. Gallagher, *"Appearance" Rule Stands for Now, But Sweeping Review Lies Ahead,* 159 *N.J. L.J.* 769 (2000). An appearance of impropriety must be "something more than a fanciful possibility" and "must have some reasonable basis." *In re Opinion No. 653,* 132 *N.J.* 124, 132, 623 *A.*2d 241 (1993)(quoting *Higgins v. Advisory Comm. of Prof. Ethics,* 73 *N.J.* 123, 129, 373 *A.*2d 372 (1977)).

■ In assessing whether a reasonable basis exists for finding an appearance of impropriety, a court must evaluate the conduct as would an "ordinary knowledgeable citizen acquainted with the facts." *Dewey v. R.J. Reynolds Tobacco Co.,* 109 *N.J.* 201, 216, 536 *A.*2d 243 (1988) (quoting *RPC* 1.7(c)(2)). Here, there is no reason to suspect that the "ordinary knowledgeable citizen acquainted with the facts" would have reached a conclusion other than that of the PCR judge.

The absence of a conflict of interest in this case, either actual or potential, precludes as time-barred further review of defendant's claim of ineffective assistance of counsel, based principally on the alleged failure of trial counsel to communicate a so-called favorable plea offer received from the State. *State v. Murray, supra,* at 251, 744 *A.*2d 131. However, although not specifically raised on this appeal, if we were to reach the merits, we would find no prejudice.

To prevail on an ineffective assistance of counsel claim, a defendant must identify an act or omission by counsel demonstrating unreasonable professional conduct and must then show that this act or omission had a prejudicial effect on the judgment of conviction. *Strickland v. Washington,* 466 *U.S.* 668, 688, 692, 104 *S.Ct.* 2052, 2064, 2067, 80 *L.Ed.*2d 674, 693, 697 (1984); *State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987). In addition where counsel has committed "egregious shortcomings in professional performance," a presumption of prejudice arises, relieving defendant of the need to demonstrate actual prejudice. *Id.,* at 61, 519 *A.*2d 336.

The PCR judge determined that defendant was not prejudiced by not having the benefit of a more favorable plea offer because his attorney advised him of the plea and he knowingly rejected it, preferring to go to trial. On this score, the PCR judge rejected defendant's suggestion that Kollar had not conveyed the plea because he was just starting a new law practice and could earn additional fees if Murray's case went to trial. Rather, the judge found it more plausible that defendant's claim was motivated by the fact that in the year 2000, he had two-and-one-half more years to serve before becoming eligible for parole whereas, under the later plea offer, he already would have been eligible. The judge credited the testimony of Kollar and was "satisfied that the plea offer was in fact extended to the defendant." Coupled with the fact that defendant had already been through three earlier plea negotiations, the judge was satisfied that "[defendant] knew what he was doing when he decided to go to trial." The record

amply supports these findings.  *See State v. Locurto,* 157 *N.J.* 463, 470–71, 724 *A.*2d 234 (1999).

In sum, defendant has failed to establish an actual attorney conflict of interest, a substantial likelihood of prejudice from the attorney relationship that did exist, or constitutionally deficient representation.  We are satisfied therefore that defendant's petition for post-conviction relief was properly denied.

Affirmed.