**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0964-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROY CARTER,

    Defendant-Appellant.

_____

Submitted May 27, 2020 - Decided July 16, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 09-12-2357.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Charged with attempted murder of his girlfriend and the armed robbery of her cousin, defendant Roy Carter was acquitted by a jury of the armed robbery, and the jury failed to reach a verdict on the attempted murder. The jury convicted him, however, of aggravated assault; aggravated assault with a deadly weapon; two counts of possession of a weapon for an unlawful purpose; two counts of unlawful possession of a weapon; and simple assault, as a lesser included offense of aggravated assault. In a separate proceeding before the same jury, defendant was also convicted of two counts of certain persons not to have weapons. The trial judge dismissed a witness tampering charge on defendant's motion before trial. Following appropriate mergers, the judge imposed mandatory extended terms under the "Three Strikes Law," and the Graves Act on the convictions for aggravated assault, possession of a weapon for an unlawful purpose and unlawful possession of a weapon and sentenced defendant to an aggregate thirty-two year prison term with a twenty-three year period of parole ineligibility and the periods of parole supervision required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed defendant's convictions and sentence on direct appeal, State v. Carter, No.

2

A-4787-10 (App. Div. Aug. 29, 2014) (slip op. at 4), and the Supreme Court denied certification, State v. Carter, 220 N.J. 575 (2015).

Defendant filed a timely petition for post-conviction relief, asserting fourteen different ways in which his counsel rendered him ineffective assistance, including that trial counsel was "inherently conflicted" based on an alleged "fee arrangement" in which defendant supplied cocaine to trial counsel's wife, in exchange for counsel's services. Judge Bauman heard argument, and determined defendant presented a prima facie case of ineffective assistance entitling him to an evidentiary hearing. See State v. Preciose, 129 N.J. 451, 462-64 (1992).

Defendant, defendant's ex-wife and trial counsel all testified. Defendant's ex-wife testified that trial counsel's wife was her closest friend for over ten years. Counsel's wife was a nurse and defendant's wife was a nurse's aide, and both worked the same shift at a nursing home owned by counsel's in-laws. In 2005, two years after they had begun working together, counsel's seventeen-year-old son was killed in a car accident, devastating counsel's wife. She began to abuse prescription drugs and eventually spent several weeks in an in-patient rehab program. Defendant's ex-wife testified that counsel's wife purchased cocaine from defendant from, at least 2006, which she attempted to

conceal from her husband. She testified that counsel's wife once told her that her husband "would kill [her] if he knew" she was buying cocaine from defendant.

Although defendant and his wife separated over the revelation that he was seeing another woman when charged for her attempted murder, defendant's wife, nevertheless, attended defendant's trial. She testified she encouraged defendant to accept the plea the State offered and, like defendant, thought trial counsel, while "he did do some successful things, . . . he could have fought the case a little harder than what he did."

Defendant claimed he met counsel's wife two years before the death of her son, when he was introduced to her by a friend knowing she was looking to buy cocaine. He testified he sold her cocaine from 2003 until early 2009, except for the period she spent in rehab in 2006. He also claimed she owed him between $50 and $75 when "he stopped dealing with her in 2009." Defendant claimed he met trial counsel through his wife and counsel's wife a few years after he was first introduced to counsel's wife. Defendant testified he never spoke to counsel about selling drugs to his wife and believed counsel was not aware defendant was doing so, at least for several years.

A-0964-18T2

According to defendant, trial counsel had previously represented him on a few traffic violations, and defendant contacted him again after he was charged in this matter in 2009. He acknowledged entering into a fee agreement with counsel to pay him a $10,000 fixed fee, and providing him a lien in that amount on the proceeds of a pending personal injury action. Although the case settled for $20,000 in 2010, trial counsel received only $2000, after costs and a lien for unpaid child support.

Defendant testified that after trial counsel learned he would not receive any more money than the $2000 for his services, he "lost interest" in the case and stopped trying to help him. Defendant claimed counsel refused to pursue various motions and was not "assertive" with witnesses at trial. Defendant also testified that trial counsel's wife visited him in the jail in 2010, told him she had informed her husband that she was using crack cocaine, and that defendant was her supplier. Defendant claimed his relationship with trial counsel "start[ed] to really diminish" after that, and he only did "the bare minimal" at trial.

Trial counsel testified the first he learned that defendant had been supplying his wife with cocaine was when he read it in the PCR petition. He claimed his wife started abusing prescription painkillers some months after

their son's tragic death, and that he worked with her parents to convince her to go to in-patient rehab. He was not aware his wife had any relationship with defendant, and was never advised by anyone that he was selling her drugs.

As to his relationship with defendant, counsel testified he met him through defendant's wife, who often visited their home. According to counsel, he first got to know defendant when he represented him on a violation of probation in 2008, a year before these crimes. Defendant's wife called counsel the morning after the crimes in March 2009 to ask whether she could give his cell phone number to her husband. Counsel gave her the number and counsel spoke to defendant. He didn't meet with defendant, however, until he was apprehended in another state and extradited to New Jersey in July 2009.

Counsel testified defendant did not have any funds, and counsel refused to enter an appearance in the case until a suitable payment arrangement could be made. According to counsel, he agreed to take a $10,000 lien on defendant's personal injury suit as an accommodation in light of his family's friendship with defendant's wife. He claimed the $10,000 was a minimum payment, and that the charge would double if he was required to take the case to trial.

6

Counsel testified at length about his efforts on behalf of defendant, including several pre-trial motions, and, in particular, his successful motion to dismiss the witness tampering charge. It was counsel's view that the tampering charge made it nearly impossible to successfully try the case, and getting it dismissed was a huge win.

Counsel also testified that the State had never offered a plea that would call for less than a twenty-year sentence with ten years of parole ineligibility. Counsel explained that defendant was confident his ex-girlfriend, who had already recanted the statement she made to the police in the hospital shortly after she was shot, would not testify against him, and defendant believed the State's case would fall apart. When the State advised counsel days before trial that the witness was in protective custody and would testify, defendant agreed to consider a plea. Counsel testified the trial judge obtained the presiding judge's permission to reopen plea negotiations on the trial date, and that counsel spent the entire day negotiating a plea agreement.

The State eventually agreed that defendant could plead to aggravated assault and it would recommend an eight-year NERA sentence. Counsel testified he had never tried to persuade a client to take a plea agreement more than he did defendant. Counsel even obtained the trial judge's permission to

7

allow defendant's wife to meet with him in order to encourage him to accept the plea. Despite their efforts, defendant refused the deal and directed counsel to counter with a seven-year NERA term, which the State rejected.

Counsel testified his relationship with defendant was difficult throughout his representation because they often disagreed on strategy. He also testified to being disappointed to learn he would only receive $2000 for his services, but claimed it did not affect the quality of his representation. He explained it was far from the first time he'd been "stiffed" by a client in a criminal matter. Counsel also testified his relationship with defendant after his conviction was "okay," and that defendant asked him to represent defendant on appeal, which counsel declined. He did, however, continue to represent defendant's ex-wife, her children and other family members until around the time that defendant filed his PCR petition.

After hearing the testimony, the judge put a meticulously detailed decision on the record denying the petition. Judge Bauman found "not a single witness . . . , including the defendant, testified that there was an agreement between [trial counsel] and defendant that defendant would sell drugs to [counsel's wife] in exchange for legal services, and not a shred of documentary evidence was adduced in support" of that claim. The judge found defendant's

claim "implausible" based on his own testimony that he had stopped selling counsel's wife cocaine in January or February 2009, a month or so before these crimes in March; that he was arrested out-of-state in April, and did not retain trial counsel until July.

The judge also found the evidence insufficient to support defendant's claim that trial counsel knew defendant sold drugs to counsel's wife, "was not happy about it, and that such knowledge had an adverse effect upon the quality of his representation." Although finding credible defendant's testimony that he sold drugs to counsel's wife after the couple suffered the excruciating loss of their son, the judge found "insufficient credible evidence" to support defendant's claim that trial counsel was ever made aware of that fact. The credible evidence in the record, supplied by defendant's ex-wife, was that counsel's wife kept her drug purchases secret from her husband, telling her friend he "would kill her" if he ever found out she was buying drugs from defendant. The judge did not believe defendant that counsel's wife visited him in pre-trial detention and told him she had confessed to her husband about their relationship.

The judge accordingly rejected that counsel was under a per se conflict, see State v. Bellucci, 81 N.J. 531, 543 (1980), and "[a]ssuming arguendo, and

contrary to the record evidence," that counsel was operating under any potential or actual conflict, found defendant suffered absolutely no prejudice, as there is nothing in the record to suggest that trial counsel's representation of defendant fell below constitutionally accepted standards, see State v. Norman, 151 N.J. 5, 25 (1997). The judge accordingly found that defendant "has not met, and cannot meet," either prong of the Strickland[1] standard.

Defendant appeals, reprising the arguments he made to the trial court and adding a claim alleging the multiple mandatory extended terms imposed at sentencing renders his sentence illegal. He styles the issues as follows:

> POINT I
>
> DEFENDANT'S ATTORNEY HAD A CONFLICT OF INTEREST ARISING FROM DEFENDANT'S SALE OF CONTROLLED DANGEROUS SUBSTANCES TO DEFENDANT'S ATTORNEY'S WIFE.
>
> POINT II
>
> THE SENTENCE IS ILLEGAL BECAUSE THE TRIAL COURT IMPOSED MULTIPLE EXTENDED TERMS ON MULTIPLE COUNTS OF ONE INDICTMENT (Not Raised Below)

Defendant raises three additional points in his pro se supplemental brief:

---

[1] Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

POINT I

TRIAL COUNSEL NEGLECTED TO SUPPRESS,
BY MOTION TO THE COURT, [THE VICTIM'S]
INVOLUNTARY STATEMENT THAT WAS
ILLEGALLY OBTAINED BY DETECTIVE
RICCIARDI, IN VIOLATION OF [DEFENDANT'S]
VI AND XIV AMENDMENTS TO THE
CONSTITUTION.

POINT II

DEFENDANT RECEIVED FURTHER
INEFFECTIVE ASSISTANCE OF COUNSEL
WHEN, COUNSEL FAILED TO IMPEACH THE
CREDIBILITY OF THE STATE'S PRINCIPAL
WITNESSES AND THEIR PRIOR INCONSISTENT
STATEMENTS IN VIOLATION OF HIS SIXTH
AMENDMENT.

POINT III

TRIAL COUNSEL FAILED TO OBJECT TO THE
HEARSAY TESTIMONY PRESENTED TO THE
JURY IN VIOLATION OF THE HEARSAY RULE
AND THE DEFENDANT'S SIXTH AMENDMENT
RIGHT TO CONFRONTATION.

Having reviewed the record, we reject those arguments as without merit,

not deserving discussion in a written opinion.  See R. 2:11-3(e)(2).  We affirm

the denial of defendant's PCR petition, substantially for the reasons expressed

in Judge Bauman's thorough and thoughtful opinion from the bench on August 17, 2018.

We decline to consider defendant's argument as to his sentence, which was not raised in his PCR petition or brought to the judge's attention at the evidentiary hearing. See State v. Robinson, 200 N.J. 1, 20 (2009) (noting appellate courts will not hear issues not presented to the trial court when the opportunity for presentation was available unless the issue goes to the trial court's jurisdiction or concerns a matter of great public interest). If defendant believes his sentence is illegal, he may bring a motion challenging it in the trial court at any time. See R. 3:21-10(b)(5); State v. Zuber, 227 N.J. 422, 437 (2017).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION